McKim, Appellant, *v.* Philadelphia Transportation Company.

Argued January 11, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*William J. Woolston,* for appellants.

*S. Regen Ginsburg,* with him *Jay B. Leopold,* for appellee.

OPINION BY MR. JUSTICE LINN, March 20, 1950:

These appeals were presented together and will be disposed of in one opinion. Between 9 and 10 o'clock on an October evening the three women plaintiffs in a car driven westward on Somerset Street by appellant, Miss Bignell, collided in the intersection of Eleventh and Somerset Streets, with defendant's street car northbound on Eleventh Street. The three occupants of the automobile were injured and brought these suits, Mrs. Walker's husband also becoming a plaintiff. The cases were tried together and the jury rendered verdicts for the defendant. The plaintiffs' motions for new trials were refused. They now present a single question for

our consideration: that the learned trial judge erred in not sustaining their objections to certain questions asked of them during cross-examination. No other point is presented.

The questions to which plaintiffs objected are quoted pursuant to Rule 22 in appellants' brief as follows: "Q. Are you an ordained minister? Q. You were ordained when and where? Q. Did you attend any seminar? Q. As an ordained minister did you officiate in any church? Q. In other words, in your occupation you visit homes, don't you, and endeavor to interest people in the beliefs and teachings of the Jehovah's Witnesses. That is what you mean when you say you are a Minister?" Each question was followed by objection which the trial judge overruled.

Appellants contend that the questions were prohibited by section 3 of the Act of April 23, 1909, P. L. 140, sec. 3, 28 PS 313. The title to the Act is: "An Act Providing that opinions on religious matters shall not affect the competency or credibility of witnesses, and that the affirmation may be taken or administered instead of the oath." The statute * dealt with both privilege and relevance but was not intended to exclude cross-examination in the circumstances presented in this record. Section 1 contains definitions. Section 2 provides, "Hereafter the capacity of any person to testify. in any judicial proceeding shall be in no wise affected by his opinions on matters of religion." Section 3 provides: "No witness shall be questioned, in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility." Section 4 provides for affirmation instead of the oath.

In the 9th paragraph of the complaint filed by Mr. and Mrs. Walker they averred: "9. As a result of the

---

* See 8 Wigmore on Evidence (3d ed.), section 2213.

aforesaid injuries, the plaintiff, Elizabeth Roberts Walker, has been and will be unable to attend to her daily duties, which include her occupation as a Minister, to her financial loss and damage." Similar averments were contained in the complaints of the other two plaintiffs. Mrs. Walker testified in direct examination that "before the accident" her occupation was "Minister, Ordained Minister"; after the accident she was "still an ordained minister," saying, however, "I can't do my regular door to door preaching because I can't get around." A plaintiff, Miss Bignell, appellant in No. 164, testified in direct examination that sometime after the accident she "did a little of [her] Bible educational work"; that it was necessary to do "175 hours a month" work to "qualify" for "an expense allowance" of "$25 per month" and that for some time after the accident she was unable to do that much work. She also testified to another source of income: "We received voluntary contributions for literature" from which, as we read the record, she was allowed to "retain" for herself approximately 50 per cent of the monies received, about $10.00 a month. In cross-examining this plaintiff, counsel called her attention to the averment (quoted above) and asked, "Are you an ordained minister?" An objection to this question was overruled. She answered "yes" and was then asked where she was ordained and answered, "I have been ordained by Jehovah God." She testified she was "a member of the Jehovah's Witnesses"; that she had "a certificate of graduation from the Watch Tower College of Gilliad." She explained the nature of the work performed by herself and the other plaintiffs as members of the religious group to which they belonged. The cross-examination was pertinent to enable the jury to consider the claims for impairment of earning power and losses said to have resulted from the accident. We cannot say that the challenged questions exceeded the scope

of fair cross examination of the parties making these claims for loss or impairment of earning power. The questions did not challenge appellants' competency to testify nor go to credibility on the ground of membership in a religious sect. It was not unreasonable cross-examination to ascertain of what the work for "175 hours a month" consisted; and in what circumstances she was allowed to retain "$10.00 a month" out of the papers sold and allowed "an expense allowance" of $25, as well as what the plaintiff meant by her evidence of receiving "voluntary contributions for literature." The purpose was to obtain substantive information necessary to supply deficiencies in the testimony given by plaintiffs in direct examination; if the answers to these questions, properly allowed in cross-examination, played any part in judging credibility, that effect was incidental and did not bring the subject within the condemnation of section 3 of the statute. There was no condemnation of or aspersion upon the parties' "opinions on religious matters," (using the words in the title) ; nor in the circumstances presented by the plaintiffs, can the cross-examination be considered within section 3 of the Act to be "concerning [the party's] religious belief . . . for the purpose of affecting either his competency or credibility." If the purpose of the cross-examination had apparently been to create prejudice against the parties because of their religious beliefs, the learned trial judge would undoubtedly have sustained the objections.

The verdicts were for the defendant. There was evidence from which the jury may have found that defendant was not guilty of negligence; on that point the jury may have considered the testimony of plaintiff's witness, Hannigan, as conclusive. As the evidence supports the verdicts the court may not set them aside unless there was error. The question now presented by plaintiff-

appellants is whether their motions for new trials should have been granted on the ground that they were prejudiced, within the meaning of the Act of 1909, supra, by the challenged cross-examination. On this record, for the reason stated, we must conclude that the court properly allowed the questions.

In each case the judgment is affirmed.