337 A.2d 914

**COMMONWEALTH of Pennsylvania**

**v.**

**Alfred Earl WEBSTER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 11, 1975.

Decided May 13, 1975.

126

Charles C. Brown, Jr., Dist. Atty., Bellfonte, for appellant.

Robert L. Martin, Public Defender, Bellfonte, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Prior to 1973, the Pennsylvania Constitution provided, with minor exceptions, that "No person shall, for any indictable offense, be proceeded against criminally by in-

formation . . . ." Article I, section 10, P.S. On November 6, 1973, the voters of the Commonwealth approved an amendment to section 10. It now reads:

"Except as hereinafter provided no person shall, for any indictable offense, be proceeded against criminally by information . . . . Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law."

The Legislature and this Court have adopted legislation and rules implementing amended section 10. Act of October 10, 1974, P.L. ——, No. 238, §§ 1–6 (to be codified as 17 P.S. §§ 271–276) ; Pa.R.Crim.P. 3, 225–32, 240, 19 P.S. Appendix. Section 5 of the Act provides that no grand jury shall be impaneled for the consideration of indictments in those judicial districts which have received the approval of this Court to substitute informations [1] for indictments [2] as the method for the initiation of criminal proceedings.[3] In those districts, criminal proceed-

---

1. See Pa.R.Crim.P. 3(h):
   "Information is a formal written accusation of an offense made by the attorney for the Commonwealth, upon which a defendant may be tried, which replaces the indictment in counties in which the indicting grand jury has been abolished."

2. See Pa.R.Crim.P. 3(g):
   "Indictment is a bill of indictment which has been approved by a grand jury and properly returned to court, or which has been endorsed with a waiver as provided in Rule 215."
   See also id. 3(c):
   "Bill of Indictment is a formal written accusation of an offense made by the attorney for the Commonwealth which has not been acted upon by a grand jury."

3. "No grand jury shall be impaneled in any judicial district where this act is applicable for the purpose of considering bills of indictment: *Provided, however,* That nothing in this act shall prohibit the impaneling as heretofore of, or affect the functioning of a grand jury for the purpose of investigating offenses against the criminal laws of the Commonwealth or for any other purpose as provided by law."
   Act of October 10, 1974, P.L. ——, No. 238, § 5. See also id. § 2:
   "This act shall not affect criminal proceedings held before the Municipal Court of Philadelphia, district justices of the peace and

ings are henceforth to be initiated by an information prepared by the attorney for the Commonwealth and filed with the court of common pleas. Pa.R.Crim.P. 225.

On November 13, 1973, the Court of Common Pleas for the Forty-ninth Judicial District (Centre County) promulgated an order providing that in that district "criminal proceedings shall be instituted by information filed in the manner provided by law without the necessity of an indicting grand jury." This Court approved the order on January 6, 1975.

Meanwhile, Alfred Webster was charged by complaint on December 2, 1974, with escaping from the Centre County prison in violation of 18 Pa.C.S. § 5121 (1973) while being held in lieu of bail on charges of robbery and conspiracy. He waived a preliminary hearing. On January 6, 1975, Webster was arraigned, at which time he entered a plea of not guilty and requested that a bill of indictment be submitted to a grand jury for its consideration. He was informed by the attorney for the Commonwealth that it intended to proceed against him by information prepared and filed in accordance with Pa.R. Crim.P. 225 & 226.[4]

On January 25, 1975, Webster filed a petition for a writ of habeas corpus. He contended that requiring him to stand trial on a criminal charge without having first

magistrates, as now provided by law and rules of criminal procedure, nor, except as herein provided, shall it affect criminal proceedings subsequent to the filing of the information by a district attorney or a special attorney appointed by the Attorney General in the manner provided by law. Except as otherwise provided in this act or to the extent that they are specifically inconsistent with prosecutions initiated by information, existing statutory law applicable to criminal prosecutions initiated by indictment shall be applicable to the information filed by a district attorney or a special attorney appointed by the Attorney General in the manner provided by law hereunder."

4. The record does not indicate why Webster was arraigned before an information was filed, in apparent violation of Pa.R.Crim.P. 317(a). This apparent irregularity is not asserted as a basis for relief.

been indicted by a grand jury violated the rights guaranteed him by the Fourteenth Amendment to the Constitution of the United States. He demanded that, unless a bill of indictment were submitted to a grand jury, he be discharged. The court of common pleas denied relief on January 27, 1975. Webster and the Commonwealth jointly petitioned this Court to assume plenary jurisdiction,[5] which we did by per curiam order on February 17, 1975. We now affirm.

■ Webster is foreclosed from contending that article I, section 10 violates any rights guaranteed by the Pennsylvania Constitution. Because permission to substitute informations for indictments is granted by the amended Constitution, any other provision of the Constitution that heretofore would have prohibited initiation of criminal proceedings in the manner permitted by article I, section 10 is pro tanto modified to permit it. Furthermore, Webster concedes that initiation of proceedings by indictment is not required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884) ;[6] see *Branzburg v. Hayes,* 408 U.S. 665, 688 n. 25, 92 S.Ct. 2646, 2660 n. 25, 33 L.Ed.2d 626 (1972); *Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S. Ct. 1221, 1226–27, 31 L.Ed.2d 536 (1972).

His sole contention is that the difference in treatment of criminal defendants in judicial districts which have substituted informations for indictments and defendants

5. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 205, 17 P.S. § 211.205 (Supp.1974).

6. "[W]e are unable to say that the substitution for a presentment or indictment by a grand jury of the proceeding by information after examination and commitment by a magistrate, certifying to the probable guilt of the defendant, with the right on his par to the aid of counsel, and to the cross-examination of the witnesses produced for the prosecution, is not due process of law." 110 U.S. at 538, 4 S.Ct. at 122.

**130**

in districts which have not is a violation of the Equal Protection Clause of the Fourteenth Amendment. We disagree.

■  The starting point of equal-protection analysis is a determination whether the State has created a classification for the unequal distribution of benefits or imposition of burdens. See *American Party of Texas v. White,* 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974) ; see generally *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) ; *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) ; *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 1225 (1971) ; *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) ; *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) ; *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920) ; Tussman & TenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341 (1949) ; Developments in the Law— Equal Protection, 82 Harv.L.Rev. 1065 (1969). Webster's contention flounders on this preliminary point. Because, in our view, initiation of proceedings by indictment affords a defendant no protection of his interests and substitution of information for indictment does not adversely affect him, it follows that initiation by indictment is no benefit and substitution of information is no burden. Therefore, there is no unequal distribution of benefits or imposition of burdens.

■  The traditional view is that an indicting grand jury is a bulwark of liberty and a guardian of the innocent from oppression by the State. See, e. g., *Wood v.*

*Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed. 2d 569 (1962):

> "Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." (footnote omitted)

Whether the indicting grand jury has in fact performed this function in the past is a question for historians. See generally Schwartz, Demythologizing the Historic Role of the Grand Jury, 10 Am.Crim.L.Rev. 701 (1972). We can say with confidence, however, that in Pennsylvania today the indicting grand jury affords no comparative advantages to those accused of crime. Our conclusion rests on two distinct propositions.

■ First, no aspect of the operation and procedures of an indicting grand jury works to the advantage or protection of an accused. The presentation of evidence before the grand jury is wholly ex parte. Even if in theory the grand jury's decisions are reached independently of the prosecution, the prosecutor is in fact the grand jury's only source of information and legal instruction. See Pa.R.Crim.P. 209. Its proceedings are secret, cf. Rule 206(b) & (c) and the testimony presented to it cannot be discovered by a defendant because the transcription or reproduction of that testimony is prohibited. Rule 208. It has been said that the grand jury must ascertain whether the Commonwealth's evidence makes out a prima facie case of the defendant's guilt. See, e. g., *Commonwealth v. Rhodes,* 34 Pa.D. & C. 237, 241 (Q.S. Delaware County, 1937) (dictum); *Commonwealth v. McIlvaine,* 28 Pa.D. & C. 133, 135 (Q.S. Delaware County, 1936) (dictum). However, the inadequacy, incompe-

tency, or even illegality of the evidence presented to the grand jury do not constitute grounds for the quashing of an indictment returned on the basis of such evidence. See *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); [7] *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *Commonwealth v. Dessus*, 423 Pa. 177, 181–85, 224 A.2d 188, 190–93 (1966); [8] *Commonwealth v. Hirsch*, 225 Pa.Super. 494, 499–500, 311 A.2d 679, 682 (1973). Even if a grand jury refuses to return an indictment, the prosecutor may, with leave of court, resubmit the bill to the same or a subsequent grand jury. Rule 217. Realistically the grand jury does not serve a protective screening function for "[a]ny experienced prosecutor will admit that he can indict anybody at any time for almost anything before any grand jury." Campbell, Delays in Criminal Cases, 55 F.R.D. 229, 253 (1972). We conclude that the operation of an indicting grand jury affords no protection to an accused. See Campbell, Delays in Criminal Cases, supra; Rosenberg, The Indicting Function of the Grand Jury Should Be Abolished, 42 Pa. Bar Q. 31 (1970); Antell, The Modern Grand Jury: Benighted Supergovernment, 51 A.B.A.J. 153 (1965).

Second, the substantial rights of an accused are equally protected regardless of the method used to initiate the proceeding. Irrespective of how a proceeding is com-

7. "The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, . . . or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination." 414 U.S. at 344–45, 94 S.Ct. at 618 (citations omitted).

8. "The law is well settled in Pennsylvania that an indictment can be found by a Grand Jury based upon hearsay testimony or upon evidence which was incompetent or inadequate to make out a prima facie case." 423 Pa. at 181, 224 A.2d at 191.

menced, no final judgment can result except after a trial in which procedural and substantive rights are accorded equally to all defendants. Neither an indictment nor an information may be filed against a defendant unless the Commonwealth has first established a prima facie case of the defendant's guilt to the satisfaction of a neutral judicial officer at a preliminary hearing. See Act of October 10, 1974, P.L. ——, No. 238, § 3(a); Rules 143(a), 224, 225(a), 231. In certain limited circumstances an information or indictment may be filed without a preliminary hearing first having been held or waived, but the circumstances are identical regardless of whether initiation is by indictment or information. Compare Rule 224 with Rule 231. The rights of an accused at a preliminary hearing are far greater than those afforded him in the operation of an indicting grand jury. See Rule 141(c);[9] *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); see also *Hurtado v. California,* 110 U.S. 516, 538, 4 S.Ct. 111, 122, 28 L.Ed. 232 (1884). These rights do not depend on whether he will be proceeded against by information or indictment. Every defendant has an identical right to notice of the charges against him without regard to how the proceeding is commenced, for the standards for the substantive sufficiency of indictments and informations are identical. Compare Rules 213(a)(1)–(6), 218, & 221, with Rules 225(b)(1)–(6), 227, & 230; see also Rule 141(c)(4).

---

**9.** "The defendant shall be present at any preliminary hearing except as provided in these rules, and may, if he desires:

    1.  be represented by counsel;

    2.  cross-examine witnesses and inspect physical evidence offered against him;

    3.  call witnesses other than witnesses to his good reputation only, offer evidence on his own behalf and if represented by counsel, testify; and

    4.  make written notes of the proceedings, or have his counsel do so, or make a stenographic, mechanical or electronic record of the proceedings."

Pa.R.Crim.P. 141(c).

In summary, an indicting grand jury affords an accused no substantial protection of his interests. The protective function that grand juries may have performed in the past is today meaningfully served by the preliminary hearing regardless of how the proceeding is initiated. In all other respects, all defendants are treated equally.

We conclude, therefore, that any difference in treatment of defendants in judicial districts which have substituted informations for indictments and defendants in districts which have not is not burdensome to the former or beneficial to the latter. Accordingly, Webster's equal protection challenge must fail.

Order affirmed.

JONES, C. J., did not participate in the consideration or decision of this case.

MANDERINO, J., concurs in the result.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice (dissenting).

I must respectfully dissent. The Constitution of the United States does not require that a state utilize the procedure of indictment by a grand jury when it prosecutes a criminal action against one of its citizens; nor does the *substitution* of a proceeding by information for the indictment method violate due process of law.[1] I would therefore have no difficulty if the Pennsylvania Constitution had been amended so as to abolish the indicting grand jury altogether. An issue of grave public importance emerges, however, when a state creates a

1. *Hurtado v. People of California,* 110 U.S. 516, 4 S.Ct. 111, 122, 28 L.Ed. 232, 239 (1884). ". . . [W]e are unable to say that the substitution for a presentment or indictment by a grand jury of the proceeding by information, after examination and commitment by a magistrate, certifying to the probable guilt of the defendant with the right on his part to the aid of counsel, and to the cross-examination of the witnesses produced for the prosecution, is not due process of law."

scheme such as that now contained in Article I, section 10 of the Pennsylvania Constitution which exposes persons accused of an indictable offense to arguably different treatment, depending upon whether the forum county has opted [2] to dispense with the grand jury. We have acknowledged the importance of the issue by our assumption of plenary jurisdiction in the case at bar.[3] Thus, we must proceed with great caution in evaluating appellant's claim that our new constitutional scheme is violative of the Equal Protection Clause of the Federal Constitution.

The key premise of the Court's holding is that "in Pennsylvania today the indicting grand jury affords no comparative advantages to those accused of crime." (Majority opinion ante at 917.) It is entirely true that if, in fact, there exists no qualitative difference between presentment by indictment and information, then there occurs no disparate treatment of citizens of this Commonwealth, and any equal protection argument is, therefore, muted. What is glaringly apparent in the Court's opinion, however, is the absolute dearth of empirical data upon which the bold and confident assertion quoted above may be grounded. Neither the record before us nor the briefs of the parties offer any assistance of this nature. The majority has referred to the writings of several scholars in which the opinion has been expressed that the grand jury no longer serves its historic and ideal function of a buffer between the accused and the

---

2. While the exercise of this option is conditioned upon approval of this Court, the constitutional amendment under review contains no guidelines or criteria to indicate the reasons for which this Court should grant or withhold approval.

3. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 205, 17 P.S. § 211.205 (Supp.1974).
   "Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or justice of the peace of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done."

state. Indeed, there seems to be general agreement that the classic role of the grand jury has been subject to serious erosion in recent years. But none of the authors referred to by the majority, unfortunately, has supported his conclusions with empirical evidence upon which to ground today's decision. For example, the observation upon which the Court places reliance that "[a]ny experienced prosecutor will admit that he can indict anybody at any time for almost anything before any grand jury" appears to be simply that—an unsubstantiated observation. *See* Campbell, Delays in Criminal Cases, 55 F.R.D. 229, 253 (1972). *See also* Rosenberg, The Indicting Function of the Grand Jury Should Be Abolished, 42 Pa.Bar Q. 31 (1970); Antell, The Modern Grand Jury: Benighted Supergovernment, 51 A.B.A.J. 153 (1965).

It may well be that these doubts concerning the efficacy of the grand jury indictment system are well-founded.[4]

4. There is much to be said in support of the view that the grand jury system has become an anachronism. It has, of course, long been viewed as " . . . one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions . . . " *Hurtado v. California,* 110 U.S. 516, 522, 4 S.Ct. 111, 114, 28 L.Ed. 232, 234 (1884) quoting *Jones v. Robbins,* 74 Mass. 329 (1857). At the time the system was initially structured to effectuate this noble function, however, the role of the prosecutor was substantially more restricted than it is today. Indeed, the prosecutor was not permitted to be present in the room in which grand jury proceedings were conducted. Schwartz, Demythologizing the Historic Role of the Grand Jury, 10 Am.Crim.L.R. 701, 758, n. 291 (1972). It is, therefore, reasonable to assume that the more visible and significant role of the modern prosecutor vis a vis the grand jury has operated to erode in some measure the treasured autonomy of that body. Beyond this, it has been argued that, in view of the thousands of cases which, in a heavily populated metropolitan area, a particular grand jury is required to consider during its term, it is doubtful that every case can be scrutinized and evaluated as it deserves. Cavanaugh & Meredith, Trial Delay and the Grand Jury, The Shingle, vol. 33, pp. 213, 215 (1970). Considerations such as these provide persuasive ground for substantial reform of the grand jury indictment procedure, and perhaps for its complete abolition. The fact remains, however, that until it can be said with reasonable certainty that the system is wholly ineffectual, we cannot avoid the conclusion that under the present constitutional scheme in Pennsylvania

It has been reported, for instance, that in 1968, grand juries in Philadelphia County returned indictments in 98% of the instances in which bills of indictment were presented by the District Attorney. Cavanaugh & Meredith, Trial Delay and the Grand Jury, The Shingle, vol. 33, pp. 213, 215 (1970), *citing* the 1968 report of the Philadelphia District Attorney. It may also be true, as the majority concludes, that the device of the preliminary hearing which, in Pennsylvania, must precede either an indictment or an information provides a screening mechanism which serves as a shield of equal strength for all those accused of crime against the actions of an over-zealous prosecutor. One wonders, however, how much reliance can properly be placed on this assumption when one considers the records of the Office of the District Attorney of Allegheny County. They reveal that in the first 4 months of 1975 approximately 3200 bills of indictment were presented to the grand jury. Of those, nearly 400, or approximately $12\frac{1}{2}\%$, were rejected by that body. The conclusion which may reasonably be drawn from these figures is that in Allegheny County, in a period of 4 months, 400 persons benefited from being proceeded against by indictment; that is to say, in that period 400 citizens of the Commonwealth who were provided with the opportunity of two screening devices benefited therefrom by being discharged without having to stand trial. This is of course a scanty sampling upon which to base a conclusion that a real and not merely a theoretical difference exists between the indictment and information procedures, and I do not presume to offer such a conclusion here. These data do, however, create an uncomfortable suspicion that strong empirical evidence is essential before we can conclude with assurance that the grand juries as they operate in the sixty-seven

persons who are accused of otherwise indictable offenses may be accorded different treatment depending upon the fortuitous circumstance of the place where criminal proceedings are initiated.

counties of Pennsylvania are mere "rubber stamps", the impotent tools of the prosecutor. In the absence of such evidence the majority's premise is questionable and so, *a fortiori*, is its ultimate conclusion.

The equal protection claim presented by the appellant, who sought and was denied review by a grand jury as a prelude to being held for court trial on the felony with which he was charged, cannot, I think, be decided in a vacuum. Facts are the indispensable ingredient in the decision of any litigation, and are of course particularly essential where constitutional issues are at stake. The record and briefs before us being devoid of any experiential facts against which grand jury operation in Pennsylvania can be tested, any decision by this Court at this time is, in my view, premature. In view of the public importance which attaches to this case, I would vacate the order appealed from and remand the case to the trial court for further proceedings at which the now missing information can be developed, with leave to either party thereafter to appeal again directly to this Court.