372 A.2d 887

**COMMONWEALTH of Pennsylvania**

v.

**Claude BROWN, a/k/a Claudel Smith, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 1976.

Decided April 19, 1977.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant raises the following contentions: (1) the grand jury lacked authority to indict him; (2) he was deprived of his right to challenge the array of the grand jury; (3) the lower court impermissibly condoned the prosecutor's cross-examination of two defense witnesses as to their religious beliefs; (4) the lower court improperly admitted out-of-court statements made by a non-testifying eyewitness; (5) the lower court erroneously allowed testimony concerning appellant's prior criminal record; and (6) the lower court improperly allowed testimony concerning appellant's arrest for an earlier robbery. Because we agree that the lower court erred in allowing the cross-examination of two defense witnesses as to their religious beliefs, we vacate the judgment of sentence and grant appellant a new trial.

On December 27, 1973, appellant was arrested and charged with robbery[1] and criminal conspiracy.[2] The charges stemmed from a robbery of the Aquarius Bar at 2564 N. 7th Street in Philadelphia earlier that night. After a preliminary hearing, a Philadelphia County grand jury indicted appellant on January 24, 1974. Trial commenced on October 1, 1974, in the Court of Common Pleas of Philadelphia County, but terminated on October 8, when the jury could not reach a verdict. The Commonwealth scheduled a

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3701.

2. The Crimes Code, supra; 18 Pa.C.S. § 903.

retrial for January 10, 1975. Immediately prior to trial, appellant made an oral motion to quash the indictment because the grand jury had been illegally constituted and because appellant had not been afforded his right to challenge the grand jury array. The lower court rejected this motion, and trial commenced before a jury in the Philadelphia Court of Common Pleas. On January 16, 1975, the jury found appellant guilty of robbery and not guilty of conspiracy. After the lower court denied appellant's post-verdict motions,[3] it sentenced appellant to a four-to-ten years' term of imprisonment. This appeal followed.

■ Appellant first contends that the grand jury had no power to issue an indictment in his case and that proceedings could only be instituted by information. Prior to November 6, 1973, Article I, § 10 of the Pennsylvania Constitution prohibited the initiation of a criminal prosecution by information. On November 6, 1973, Pennsylvania voters approved a constitutional amendment which provided, in pertinent part: "Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for

**3.** Appellant did not make oral post-verdict motions on the record at the conclusion of trial. See Pa.R.Crim.P. 1123(b); 19 P.S. Appendix. Instead, he filed written post-verdict motions within seven days after the jury returned its verdict of guilty. See Rule 1123(a). However, his written motions were simply boiler-plate challenges to the sufficiency of the evidence. At oral argument, appellant raised more specific contentions; the lower court responded to these contentions in its opinion.

On January 27, 1975, our Supreme Court announced that boiler-plate written post-verdict motions would no longer suffice to preserve issues for appellate review. See *Commonwealth v. Blair,* 460 Pa. 31, 33 n. 1, 331 A.2d 213, 214, n. 1 (1975). The Supreme Court required that post-verdict motions raise the specific contentions sought to be reviewed. However, in *Blair,* the Court did consider the appellant's motions raised at oral argument because some courts had engaged in a long-standing practice, upon which counsel relied, of accepting and ruling upon motions raised at oral argument. Because appellant in the case at bar filed his motions before the Supreme Court articulated the rule of *Blair* and because the lower court specifically addressed the contentions raised at oral argument, we conclude that appellant's claims are properly before us. See *Commonwealth v. Bailey,* 463 Pa. 354, 344 A.2d 869 (1975).

the initiation of criminal proceedings therein by information filed in the manner provided by law." On December 17, 1973, the President Judge of the Court of Common Pleas of Philadelphia County petitioned the Supreme Court for permission to replace the system of grand jury indictments with a system of instituting proceedings by information; this change would be effective on January 1, 1974. The Supreme Court granted this petition. During the month of January, 1974, an indicting grand jury continued to function in Philadelphia[4] and on January 24, the grand jury indicted appellant. On February 15, 1974, the Supreme Court promulgated Rules of Criminal Procedure pertaining to the filing of informations. See Pa.R.Crim.P. 225 et seq.; 19 P.S. Appendix. On February 27, 1974, the President Judge petitioned the Supreme Court for permission to postpone the effective date of initiation of criminal proceedings by information; the Supreme Court granted this petition. On October 10, 1974, the Pennsylvania legislature passed legislation implementing a system of initiating prosecutions by information in counties which had received the Supreme Court's permission to institute such a system.[5] The legislature specified the procedures to be followed in prosecutions initiated by information. On October 22, 1974, the President Judge once again petitioned the Supreme Court to permit the use of informations instead of indictment by grand jury; once again, the Supreme Court granted the petition, effective January 1, 1976. On December 23, 1974, the Supreme

4. Appellant concedes that the Philadelphia District Attorney had two legitimate reasons for continuing to employ the system of grand jury indictments during January, 1974. First, a challenge to the constitutionality of maintaining an information system in some counties while utilizing a grand jury indictment system in other counties was pending before the Supreme Court at that time. See *Commonwealth v. Webster*, 462 Pa. 125, 337 A.2d 914 (1975). (In *Webster*, the Supreme Court ultimately held that a person accused by information instead of by a grand jury was not denied the equal protection of the law.) Second, there were no rules of criminal procedure or statutes in existence at that time to serve as guidelines for the operation of an information system.

5. Act of October 10, 1974, P.L. 713, No. 238, § 1; 17 P.S. § 271 et seq.

Court issued the following final order which terminated the parade of petitions and postponements:

"AND NOW, to wit, this 23rd day of December, 1975, our Orders heretofore entered granting approval to abolish indicting grand juries are amended to provide:

"Approval granted to abolish indicting grand jury, effective January 1, 1976. Effective January 1, 1976, no grand jury shall be empaneled for the purpose of considering bills of indictment, and no grand jury shall be held over from a prior term as an indicting grand jury. In lieu thereof, proceedings against criminal defendants shall be by information."

We reject appellant's contention that the Philadelphia County Grand Jury lacked power to indict him. We believe that the Supreme Court did not intend to make mandatory the initiation of criminal proceedings by information in Philadelphia County before appropriate rules or statutory provisions governing the information process had been promulgated. Article I, § 10 of the Pennsylvania Constitution provides that courts of common pleas may with the approval of the Supreme Court, "provide for the initiation of criminal proceedings therein by information *filed in the manner provided by law.*" (Emphasis supplied). As of January 24, 1974, the legislature had not passed implementing legislation and the Supreme Court had not issued governing rules of criminal procedure; we will not infer that the Supreme Court meant to require the use of an information when the legal framework of rules mandated by the Constitution had not yet been erected. Cf. *In re Investigation of January 1974 Philadelphia County Grand Jury,* 458 Pa. 586, 598 n. 5, 328 A.2d 485, 494 n. 5 (1974). It was not until the order of December 23, 1975, after the legislature had enacted an enabling statute and the Supreme Court had created applicable rules of criminal procedure, that the Supreme Court issued a final order which amended all previous orders and terminated the initiation of criminal prosecutions by grand jury indictment in Philadelphia County. Consequently, we

conclude that the January 1974 Philadelphia County grand jury had power to indict appellant.[6]

■ Appellant next contends that the lower court erroneously permitted the Commonwealth to cross-examine two defense witnesses as to their religious affiliation and beliefs. The defense presented one witness who testified that he saw appellant in the Page Three Bar at Germantown Avenue and Haines Street in Philadelphia at 8:00 p. m., on December 27, 1973, the night that appellant allegedly robbed the Aquarius Bar. On cross-examination, the prosecutor and the witness engaged in the following interchange:

"Q. When you say 'brother', what do you mean by 'brother'?

"[Defense counsel]: Objection.

"THE COURT: Overruled.

"[Assistant District Attorney]:

"Q. What do you mean by that?

"A. More or less like my religion, we call each other brother, that is what I mean.

"Q. Any relation—you're a Muslim; is that correct?

**6.** Appellant also contends that he believed that the grand jury had no power to act and, therefore, he justifiably failed to file any pre-indictment challenges to the grand jury array. Accordingly, he contends that he was deprived of his right to challenge the grand jury array. See Pa.R.Crim.P. 203, 19 P.S. Appendix. Appellant's argument is merely a reformulation of his contention that the grand jury lacked power to indict him. We have already rejected this argument. Moreover, his contention is apparently an afterthought; appellant did not file a motion to quash the indictment before his first trial. Had he truly believed that the grand jury lacked power to indict him on January 24, 1974, he would have filed this motion. Finally, Pa.R.Crim.P. 203 requires that all challenges to the array of the grand jury be made before the bill of indictment is submitted to the grand jury.

We also note that appellant does not contend that he was prejudiced because he was accused by a grand jury instead of by information. Such a contention would be frivolous. As stated by the Supreme Court in *Commonwealth v. Webster,* supra, 462 Pa. at 132, 337 A.2d at 918: ". . . [T]he substantial rights of an accused are equally protected regardless of the method used to initiate the proceeding." Cf. *Wood v. Georgia,* 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962).

"[Defense counsel]: Yes.

"THE COURT: Overruled.

"THE WITNESS: Yes, I'm a Muslim.

"[Assistant District Attorney]:

"Q. THAT is why you refer to him as brother. That is why you affirm and now swear; is that correct?

"[Defense counsel]: Objection.

"THE COURT: Overruled.

"THE WITNESS: That is correct.

"[Assistant District Attorney]:

"Q. Is it part of your religion, do you have an X in your middle name; is that correct?

"[Defense counsel]: Objection.

"THE COURT: Overruled.

"THE WITNESS: Yes, sir.

"[Assistant District Attorney]:

"Q. Does that mean that you're actually full fledged Muslim?

"[Defense counsel]: Objection.

"THE COURT: Overruled.

"THE WITNESS: Yes, sir.

"[Assistant District Attorney]:

"Q. You're a full brother in the Muslim Mosque, I take it?

"A. Yes, sir.

"Q. And yet, what is the significance of the X?

"[Defense counsel]: Objection.

"THE COURT: I don't know how relevant all this is.

"[Assistant District Attorney]: I think it is, Your Honor, I will get to it shortly.

"THE COURT: All right, overruled.

"[Assistant District Attorney]:

"Q. What is the significance of the X?

"A. What is the significance of the X?

"[Defense counsel]: Your Honor, I have a standing objection to any of this line.

"THE COURT: We have heard it, . . .

"[Defense counsel]: Regarding religion, Your Honor.

"THE COURT: All right.

"[Assistant District Attorney]:

"Q. What is the significance?

"A. Like I am X, considered X-smoker, X-drinker, X-anything X.

"Q. It signifies that you have been purified, in other words?

"A. In other words, changed in my ways.

"Q. As a result of your religion, you're not allowed to go into bars, are you?

"A. I am. I can go in bars, as far as sitting down and drinking, no, sir.

"Q. Aren't you disallowed from even going into a place that sells alcohol, under your religion?

"A. No, sir, long as I don't get involved with it myself.

"Q. You can go in there as long as—

"A. Yes, sir.

"Q. As a matter of fact, I believe in your religion, one of the basic tenets is that the law of the city and county does not apply to the brothers; is that correct?

"A. Sir?

"THE COURT: I am going to sustain that objection."

Subsequently, the prosecutor asked the witness if he knew any other people in the bar that night. When the witness replied that he knew one person, the prosecutor asked if this person were also a Muslim. The witness responded affirmatively. The prosecutor then asked if this person had an "X" in his middle name and what this person was doing in the

bar. The witness answered that his acquaintance did not have an "X" in his name and that he was selling jewelry. Finally, the prosecutor asked the witness if appellant were a "brother". The lower court once again overruled defense counsel's objection and the witness gave an affirmative reply. The prosecutor asked if the Muslim religion prohibited appellant's presence in the bar unless he was doing business. Over objection, the witness stated that this was correct. The witness also said that he did not know if appellant had been doing business in the bar.

After the prosecutor concluded his cross-examination, defense counsel moved for a mistrial because of the prejudicial and improper questioning of the witness as to his religious beliefs and associations. The lower court denied this motion for a mistrial because it believed that the prosecution was properly testing the credibility of the witnesses.

The defense then called another witness who testified that he saw appellant in the Page Three Bar at 7:30 p. m., on December 23, 1974. On cross-examination, the prosecutor asked the witness if he belonged to a Muslim sect and if his faith prohibited his presence in a bar. Defense counsel objected to both questions; the lower court overruled his objections and the witness gave affirmative answers. The prosecutor then asked three times if the presence of the witness in the bar meant that he was willing to bend his religious principles. After the witness answered the first question affirmatively, the lower court sustained objections to the second and third questions.

Subsequently, the prosecutor returned to the subject of the Muslim faith of the witness. He asked the witness if he had seen a couple of "brothers" enter the bar. The witness said yes. The prosecutor then asked if the witness got into trouble because these two other "brothers" visited the bar; the witness said no. Finally, the prosecutor asked: "I take it this isn't one of the strongest principles of your religion?" The lower court sustained defense counsel's objection.

The Act of April 23, 1909, P.L. 140, § 3, 28 P.S. § 313 provides: "No witness shall be questioned, in any judicial

proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility." Our Supreme Court has held that this statutory directive does not bar evidence of a religious affiliation when such evidence is directly relevant to the substantive issues of a case and only incidentally impacts upon the credibility of a witness. For example, in *McKim v. Philadelphia Transportation Co.,* 364 Pa. 237, 72 A.2d 122 (1950), the Supreme Court allowed a plaintiff who had alleged impairment of his earning power because of defendant's tortious activity to be cross-examined as to his duties as a Jehovah Witnesses' minister. In the instant case, however, the lower court allowed the prosecution to question the two witnesses as to their religious beliefs because they might have been biased towards appellant as a "brother" Muslim and because the Muslim religion frowns on the presence of its adherents in bars. In short, the lower court sanctioned questions designed to directly impugn the credibility of appellant's two alibi witnesses. Because of the express mandate of 28 P.S. § 313, we cannot accept the lower court's rationale for allowing the prosecution to cross-examine appellant's alibi witnesses on the subject of their religious beliefs and affiliation.[7]

7. The Commonwealth asserts that appellant's counsel failed to raise the applicability of 28 P.S. § 311 either before the lower court or before our Court. Therefore, the Commonwealth argues, *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975), (Plurality Opinion of Justice NIX) precludes our consideration of the applicability of the statute because appellant did not present this "theory" to the trial court. In *Commonwealth v. Mitchell,* the Supreme Court held that a litigant could not raise a violation of Pa.R.Crim.P. 130, 19 P.S. Appendix, and *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), before an appellate court if he only challenged the voluntariness of his confession before the court below. We will not extend *Mitchell* to the facts of this case. Appellant made specific objections at trial and at the post-trial motion hearing to the lower court's ruling that the credibility of the two alibi witnesses could be impeached by questions involving their religious beliefs. Appellant raises the same contention before us. 28 P.S. § 311 merely provides additional support for appellant's claimed theory of relief, much as a case decided by the Supreme Court or our Court might support his claim. Parenthetically, we note that the lower court's reliance on *Common-*

The Commonwealth relies on *Commonwealth v. Mimms,* 232 Pa.Super. 486, 335 A.2d 516 (1975). In *Mimms,* a majority of our Court held that a trial court did not commit fundamental error when it allowed the prosecution to ask a witness if he and the defendant were both Muslims. However, in *Mimms,* the prosecutor only asked two questions concerning the religious beliefs of the witness.[8] In contrast to *Mimms,* the prosecution in the instant case engaged in prolonged and sometimes emotionally charged questioning of the two witnesses as to their Muslim beliefs. At one point, the prosecutor asked: ". . . I believe in your religion, one of the basic tenets is that the law of the city and county does not apply to the brothers; is that correct?" Although the lower court sustained an objection to this question, the query indicates a prosecutorial design to inflame the jury against the witnesses and appellant, as a fellow Muslim, because of their religious beliefs. Moreover, the prosecutor made no attempt to confine his inquiry into the religious beliefs of the witnesses. Instead of directly asking if the witnesses were Muslims and if that faith proscribed their presence in a bar, the prosecutor delved extensively into some of the distinctive traits of the Muslim religion. For example, he asked why the witnesses chose to affirm rather than swear an oath, why they referred to other members of the sect as "brothers," and why Muslims had an "X" in their middle names. Because the Commonwealth persistently and improperly emphasized the association of appellant and his two alibi witnesses with the Muslim

*wealth v. Mimms,* 232 Pa.Super. 486, 335 A.2d 516 (1975) indicates that it was aware of the existence of 28 P.S. § 311.

8. The writer of this opinion, joined by Judges JACOBS and SPAETH, dissented in *Mimms* and expressed the conviction that 28 P.S. § 313 bars *all* questioning of a witness designed to impeach his credibility because of his religious beliefs. I reaffirm this belief today.

412

religion, we must vacate the judgment of sentence and grant appellant a new trial.[9]

Judgment of sentence vacated and a new trial granted.

VAN der VOORT, J., concurs in the result.

PRICE, J., files a dissenting opinion.

PRICE, Judge, dissenting:

I would affirm the judgment of sentence, not because I disagree with the majority's treatment of the merits of appellant's claim of error in the cross-examination of two defense witnesses as to their religious beliefs, but because I believe *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975), controls, and that appellant has waived the argument he now advances. Nothing could be clearer than the announcement in *Mitchell* that it is a fundamental principle of appellate review that we may not reverse a judgment or decree on a theory that was not presented to the trial court. It is also clear that appellant's theory now advanced was not presented to the lower court, nor does the lower court's citation of *Commonwealth v. Mimms,* 232 Pa.Super. 486, 335 A.2d 516 (1975), cure this defect. Our majority decision in *Mimms* does not rely upon nor cite 28 P.S. § 311. Furthermore, assuming the lower court's awareness of the statute does not cure the requirement that the specific theory must be presented to the lower court. We assume, in the nature of judicial knowledge and notice, that the lower court knows all the statutes and law of Pennsylvania and such a procedure would render the whole doctrine of waiver a nullity. This we can not do.

I must also note that I believe our decision in *Mimms* was, and is, correct. I therefore join the majority in distinguishing the case today, but do not join Judge HOFFMAN'S reaffirmation of belief as expressed in the majority opinion. (247 Pa.Super. at 411 note 8, 372 A.2d at 892, note 8)

**9.** Because of this disposition, we do not consider appellant's other claims of trial error.

I find no merit to appellant's remaining assignments of error.

I would affirm the judgment of sentence.