J-S59044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                         :         PENNSYLVANIA
                                           :
            v.                             :
                                           :
                                           :
KENNY TORRES                     :
                                           :
            Appellant            :     No. 2539 EDA 2017

Appeal from the Judgment of Sentence July 21, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0011025-2015

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                **FILED MARCH 12, 2019**

Kenny Torres appeals from the judgment of sentence imposed July 21, 2017, in the Philadelphia County Court of Common Pleas.  The trial court sentenced Torres to an aggregate term of six and one-half to 15 years' imprisonment, following his jury conviction of aggravated assault, conspiracy, possession of a firearm without a license, and related charges[1] for an August 21, 2015, attack on Nathaniel Martin Davis.  Torres' sole issue on appeal challenges the constitutionality of Pennsylvania Rule of Criminal Procedure 556, which permits the Commonwealth to proceed by way of an indicting grand jury when witness intimidation has occurred, is occurring, or is likely to occur.  For the reasons below, we affirm.

_____

[1] **See** 18 Pa.C.S. §§ 2702, 903, and 6106, respectively.

The facts underlying Torres' conviction were summarized by the trial court as follows:

> On August 21, 2015, around 4:50 PM, Jamar Carroll noticed a group of black teenage boys, including the victim, he had never seen before. After the group of boys walked out of sight, he heard an altercation around 11th Street. Carroll testified that he heard the group of boys say, "'There he go right there.' 'Get him for everything they got.'" After he heard this exchange, he saw Josh Terreforte, a friend of [Torres], walk into view with a bloody face and black eye.

> Later, that same afternoon, Destiny Flemings was walking down Ontario Street towards the Chinese store on Rising Sun Avenue. Flemings heard a blue pickup truck belonging to [Torres'] father speeding and saw that it contained [Torres] and his father. Flemings saw [Torres] and another person, possibly [Torres'] cousin, jump out of the truck on the corner or 11th and Ontario. [Torres] and the other person each held a bat and [Torres] also held a small, black handgun in his right hand. [Torres] and the other person repeatedly hit the victim with their bats until the victim collapsed to the ground[;] afterwards, [Torres] shot the victim in the side.

> Police Officer Sean Clift testified that on August 21, 2015 he was patrolling the 25th District, the North Philadelphia area, in a marked police vehicle with his partner, Officer Stephen Bennis. Around 4:50 PM, Officer Clift responded to a radio call reporting a shooting on [the h]ighway in the area of 3400 Goodman. Officer Clift and his partner arrived at the location within less than a minute and saw a young black man lying on the sidewalk, suffering from a gunshot wound.

> Upon arrival to the location, Officer Clift and his partner rushed out of their patrol vehicle and picked the man up. The man had been shot in his right leg and suffered from a broken femur. Officer Clift asked the man who had shot him and which way the shooter had gone. The injured man refused to speak with the police officers and then a Hispanic man walked over and said it had been a dark colored pickup truck headed northbound on 11th Street. After arriving to Temple Hospital with the victim, the police officers obtained the victim's ID card retrieved from the

victim's pants pockets by the hospital staff. The victim was identified as Nathaniel Martin Davis.

Davis underwent surgery on August 22, 2015 to repair his fractured femur, in which they placed a rod into his leg to realign the leg. On August 25, 2015, Davis underwent a follow-up surgery to embolize an artery that had been severed and was consistently bleeding. Davis was discharged on August 27, 2015.

Detective Miles testified that he obtained a search warrant for [Torres'] residence at 1018 West Russell in Philadelphia. The search warrant was executed on August 28, 2015 at 6:35 AM, about a week after the shooting occurred. On August 28, 2015 at around 6:30 AM, Detective Miles and a warrant unit arrived at [Torres'] house. The warrant unit knocked on the front door while Detective Miles went to the back of the residence. There was no response from the front door, but the back door opened. Detective Miles then observed [Torres] leaving through the back door in only his boxers and attempting to climb a wall to the right of the house. Detective Miles demanded [Torres] stop and [Torres] complied.

At some point after the shooting, Detective Miles returned to the scene where he believed the shooting occurred and recovered three fired .380 caliber cartridge casings. After ordering [Torres] back into the residence, Detective Miles recovered a black shotgun with various shotgun shells from the residence's second floor bedroom. There were no .380 caliber shells discovered at [Torres'] home and no ammunition that would have been able to fit into a .380 firearm. No bullet was ever recovered from Davis' body.

Trial Court Opinion, 3/12/2018, at 2-4 (record citations omitted).

On October 20, 2015, a grand jury returned an indictment[2] against

Torres for the following charges: aggravated assault, criminal conspiracy, two

violations of the Uniform Firearms Act, possession of an instrument of crime,

_____

[2] *See* Pa.R.Crim.P. 556.

- 3 -

simple assault, and recklessly endangering another person.[3] Torres was initially represented by the Defender Association of Philadelphia. On November 25, 2015, counsel filed an omnibus pretrial motion, asserting, *inter alia*, that Pennsylvania Rule of Criminal Procedure 556 is unconstitutional and, therefore, Torres' indictment was invalid. **See** Omnibus Motion Pursuant to Rule 556 of the Pennsylvania Rules of Criminal Procedure, 11/25/2015, at unnumbered 2-4. That motion was never ruled upon by the trial court. On January 9, 2016, new counsel entered his appearance for Torres, followed by a second change of counsel on October 31, 2016. The case proceeded to trial and, on March 13, 2017, a jury found Torres guilty of all charges.

On July 21, 2017, Torres was sentenced to an aggregate term of six and one-half to 15 years' imprisonment, followed by four years' probation.[4] He filed a timely post-sentence motion challenging the weight of the evidence and discretionary aspects of his sentence, which the trial court denied on August 1, 2017. This timely appeal followed.[5]

_____

[3] **See** 18 Pa.C.S. §§ 2702, 903, 6106, 6108, 907, 2701, and 2705, respectively.

[4] At the sentencing hearing, Torres entered a guilty plea to charges of simple assault, terroristic threats, and possession of an instrument of crime on an unrelated case. **See** N.T., 7/21/2017, at 17. The court imposed a sentence of probation for those crimes, to run concurrent to the probationary period in the present case. **See id.** at 47-48.

[5] Present counsel was appointed to assist Torres in litigating his direct appeal. On August 17, 2017, the trial court ordered counsel to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After

The sole question on appeal concerns the constitutionality of Pennsylvania Rule of Criminal Procedure 556. Because this issue presents a question of law, "our standard of review is *de novo* and our scope is plenary." ***Commonwealth v. Far***, 46 A.3d 709, 712 (Pa. 2012).

By way of background, prior to 1973, the Pennsylvania Constitution "prohibited the initiation of a criminal prosecution by information[,]" and criminal cases were commenced *via* an indictment by a grand jury. ***Commonwealth v. Brown***, 372 A.2d 887, 888 (Pa. Super. 1977). On November 6, 1973, Pennsylvania voters approved an amendment to the Constitution which, *inter alia*, provided for the initiation of criminal proceedings by information. ***See*** Pa. Const. Art. 1, § 10 ("Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law."). The Pennsylvania Legislature later adopted legislation to implement the initiation of criminal proceedings by information prescribed in Article 1, Section 10. Section 8931 of Title 42 provides, in relevant part:

> **(b) Criminal information. –** Each of the courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided or prescribed by law. …

---

receiving an extension of time, counsel complied with the court's directive, and filed a concise statement on September 27, 2017. Although counsel raised six issues in the concise statement, he has only pursued the claim regarding the constitutionality of Rule 556 on appeal.

**(c) Jurisdiction and duties of courts. –** The several courts of common pleas which have obtained the approval of the Supreme Court to provide for the initiation of criminal proceedings by informations instead of by grand jury indictments, shall possess and exercise the same power and jurisdiction as they heretofore possessed in cases of prosecutions upon indictments.

\* \* \* \*

**(f) Investigating grand juries unaffected. –** No grand jury shall be impaneled in any judicial district where this section is applicable for the purpose of considering bills of indictment. This section shall not prohibit the impaneling of grand juries … for any other purpose as provided or prescribed by law.

\* \* \* \*

**(h) Applicability of section. –** Subsections (c) through (g) shall be applicable only in those judicial districts which have obtained the approval of the Supreme Court to substitute informations for grand jury indictments as the method of initiating criminal prosecutions. …

42 Pa.C.S. § 8931 (b), (c), (f) and (h).

Subsequently, in 2012, the Pennsylvania Supreme Court adopted Pa.R.Crim.P. 556, which revived the initiation of criminal proceedings by grand jury indictment under certain, limited circumstances. This Rule permits a trial court to "proceed with an indicting grand jury … only in cases in which witness intimidation has occurred, is occurring, or is likely to occur." Pa.R.Crim.P. 556(A).[6]

---

[6] Subsection (B) of Rule 556 directs any court of common pleas that seeks to resume the use of indicting grand juries to petition the Pennsylvania Supreme Court. *See* Pa.R.Crim.P. 556(B). The petition must include a certification from the district attorney averring, *inter alia*, that "witness intimidation has occurred, is occurring, or is likely to occur[.]" Pa.R.Crim.P. 556(B)(5)(b).

Torres contends Rule 556 is unconstitutional because the Pennsylvania Legislature abolished the indicting grand jury, "in accordance with a constitutional amendment expressing a similar purpose." Torres' Brief at 10. He insists the Pennsylvania Supreme Court violated Article V, § 10(c) of the Pennsylvania Constitution when it enacted the Rule. Article V, Section 10(c) empowers the Supreme Court to prescribe rules governing practice and procedure so long as they do not "abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court[.]" Pa. Const. Art. 5, § 10(c). Torres maintains Rule 556 "infringes upon the substantive rights of an accused to be free from prosecution commenced via an indicting grand jury" and "enlarge[s] the jurisdiction of the Courts of Common Pleas[.]" Torres' Brief at 8, 11.

Before we address the substance of Torres' constitutional challenge, we must first consider whether his claim is waived. It is axiomatic that issues not raised in the trial court are waived on appeal. Pa.R.A.P. 302(a). Particularly, with respect to purported defects in an indictment, information, or preliminary hearing, this Court has held that such issues "are to be remedied by a motion to quash the indictment or information[;]" otherwise, they are waived. **Commonwealth v. Hodge**, 411 A.2d 503, 509 (Pa. Super. 1979) (holding defendant's claim that district attorney improperly proceeded without conducting a preliminary hearing waived when defendant raised the issue for the first time in post-verdict motion). **See also** Pa.R.Crim.P. 556.4(C) (providing procedure by which a defendant may challenge the finding of a

grand jury, noting the motion "shall be made as part of the omnibus pretrial motion."). Indeed, after a defendant is tried and convicted by a jury, any deficiency in a preliminary hearing proceeding – or in this case, a grand jury's indictment – is considered harmless. **See Commonwealth v. Cassidy**, 620 A.2d 9, 11 (Pa. Super. 1993), *appeal denied*, 637 A.2d 279 (Pa. 1993).

In the present case, although prior counsel filed an omnibus pretrial motion seeking to dismiss the indictment, the court never ruled on the motion, and subsequent counsel did not renew the request for the court do so. Accordingly, the issue was implicitly abandoned by Torres. Nevertheless, even if we were to conclude this claim was not waived, we would still find Torres is entitled to no relief.

Preliminarily, we must presume the Pennsylvania Supreme Court acts constitutionally when it promulgates a rule of procedure. **See Commonwealth v. Ricker**, 120 A.3d 349, 362 (Pa. Super. 2015), *appeal dismissed as improvidently granted*, 170 A.3d 494 (Pa. 2017). Here, however, Torres insists the Supreme Court acted outside its authority under the Constitution by modifying the substantive rights of criminal defendants to receive a preliminary hearing "free from an indictment by an indicting grand jury" and "enlarg[ing] the jurisdiction of the Courts of Common Pleas." Torres' Brief at 10, 11. Conversely, the trial court found: (1) "[t]here is no substantive right of an accused to be free from prosecution commenced *via* an indicting grand jury[;]" and (2) Rule 556 does not "impact[] the right of

the General Assembly to determine the jurisdiction of any court[.]" Trial Court Opinion, 3/12/2018, at 16-17. We agree.

It is important to note that neither the United States nor Pennsylvania Constitution provide a criminal defendant with a constitutional right to a preliminary hearing. *Commonwealth v. Mayberry*, 327 A.2d 86, 92 (Pa. 1974) ("Certainly the Constitution does not require any particular mode of informing an accused of the charges against him."). Moreover, the constitutional amendment upon which Torres bases his claim provides only that the courts of common pleas "*may*, with the approval of the Supreme Court, provide for the initiation of criminal proceedings there by information[.]" Pa. Const. Art. 1, § 10. Article 1, Section 10 does not preclude the courts of common pleas from proceeding by indictment. Therefore, we agree with the conclusion of the trial court that Rule 556 does not infringe on any substantive right of the accused.

Nor do we find the Supreme Court's enactment of Rule 556 "affect[s] the right of the General Assembly to determine the jurisdiction of any court[.]" Pa. Const. Art. 1, § 10. As the Commonwealth explains in its brief, "the jurisdiction of the Common Pleas Court remained unchanged regardless of whether or not a criminal case is initiated by grand jury indictment." Commonwealth's Brief at 12, *citing* 42 Pa.C.S. § 931(a). Furthermore, while Torres emphasizes the language in 42 Pa.C.S. § 8931 that appears to preclude

the initiation of criminal proceedings by way of a grand jury indictment,[7] that subsection presumes the court of common pleas obtained approval from the Supreme Court to initiate proceedings by way of information. Rule 556 simply provides a limited, alternative method to initiate criminal proceedings when witness intimidation is a concern. Accordingly, we conclude Rule 556 is not unconstitutional.

Judgment of sentence affirmed.

Judge Lazarus joins this memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/19

---

[7] *See* 42 Pa.C.S. § 8931(f).

- 10 -