Jeffrey S. Robson, a minor, by Edwin G. Robson and Elizabeth L. Robson, parents and natural guardians and Edwin G. Robson and Elizabeth L. Robson, in their own right, Appellants v. Penn Hills School District, Appellee.

Argued October 6, 1981, before President Judge CRUMLISH, JR. and Judges MENCER, ROGERS, BLATT and WILLIAMS, JR.

*Joseph M. Zoffer, Ecker, Ecker, Zoffer & Rome,* for appellants.

*John C. Conti, Weis & Weis,* for appellee.

Opinion by Judge Mencer, December 16, 1981:

On January 23, 1980, Jeffrey Robson, aged 12 years, was injured when he was struck in his left eye by a pencil thrown by a classmate while both were in attendance at a sixth grade class at Dible Grade School in Penn Hills School District. At the time of Jeffrey's eye injury, the teacher had left the classroom, and the class was unsupervised.

The parents of Jeffrey Robson (appellants), on his behalf and in their own right, filed suit in trespass against the School District, which thereafter made a motion for summary judgment seeking the dismissal of the complaint. The Court of Common Pleas of Allegheny County granted the School District's motion for summary judgment and dismissed the complaint, on the basis that the conduct of the School District complained of in the complaint did not come within the ambit of Section 202(b)(3) of the Political Subdivision Tort Claims Act (Act)[1] and that the constitutional arguments raised by the plaintiffs were either without merit or were not ripe for consideration. This appeal followed and we affirm.

The appellants assert that the alleged negligent conduct of the School District was directly related to the care, custody, and control of real property,[2] one

---

[1] Act of November 26, 1978, P.L. 1399, *as amended, formerly* 53 P.S. §5311.202(b)(3), repealed by Section 333 of the Act of October 5, 1980, P.L. 693. A similar provision is now found in 42 Pa. C. S. §8542(b)(3). Act held to be constitutional in *Carroll v. County of York,* Pa. , 437 A.2d 394 (No. 152 W.D. Misc. Dkt. 1980, filed November 6, 1981).

[2] It seems apparent that Jeffrey Robson's injuries resulted from a pencil, personal property, striking his left eye. Although the record does not enlighten one as to the ownership of the pencil, it seems fair to assume that it was a pencil furnished and owned by the School District, and accordingly Section 202(b)(2) of the Act,

of the specific exceptions to governmental immunity enumerated in the Act. In Section 202(b)(3), the Act provided:

Section 202. Exceptions to governmental immunity.

. . . .

(b) Actions or activities which may impose liability.—The following acts or activities by a political subdivision or any of its employees may result in the imposition of liability on a political subdivision:

. . . .

(3) The care, custody or control of real property in the possession of the political subdivision, except that the political subdivision shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the political subdivision. As used in this paragraph, "real property" shall not include trees, streets, sidewalks, traffic signs, lights and other traffic controls, street lights and street lighting systems and facilities of steam, sewer, water, gas and electric systems owned by the political subdivision and located within rights of way.

Our reading of the complaint leads us to the determination that the "action or activity" complained of can be fairly characterized as the supervision of students. Therefore, we can only conclude that it would be a total distortion of the language of Section 202(b)(3) to allow the supervision, or lack of supervision, of school children to fall within the scope of

---

*formerly* 53 P.S. §5311.202(b)(2), which dealt with personal property *of others* in the possession or control of the political subdivision would not be applicable to the fact situation here.

care, custody and control of real property.[3] Thus, we accept the view of the court below that "a more common sense approach is warranted here."

However, the appellants contend further that the Act is unconstitutional. We consider this contention, mindful of the principle of law which creates a presumption in favor of constitutionality. An act of assembly will not be declared unconsitutional unless it clearly, palpably and plainly violates the constitution. *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963). The burden rests heavily upon the party seeking to upset legislative action on constitutional grounds.

The Act sets forth the type of losses for which it permits recovery and places a threshold barrier to the recovery of compensation for pain and suffering. The appellants contend that therefore some victims have greater rights than others, resulting in classes of victims, which classification is foundationed upon an arbitrary and unreasonable basis and is violative of the equal protection clause of the United States Constitution.

The starting point of an equal protection analysis is a determination of whether the state has created a

[3] The appellants' reliance on *Mistecka v. Commonwealth,* 46 Pa. Commonwealth Ct. 267, 408 A.2d 159 (1979), is misplaced. In *Mistecka,* the plaintiffs sued the Commonwealth, contending that the Commonwealth's failure to prevent recurring incidents of rock throwing onto a state highway constituted a "dangerous condition" of Commonwealth real estate and therefore fell within one of the immunity exceptions contained in 42 Pa. C. S. §5110, repealed by Section 221(g) of the Act of October 5, 1980, P.L. 693. A similar provision is now found in 42 Pa. C. S. §8522. *Mistecka* involved a different statute from the statute involved here. The pertinent provision involved in *Mistecka* dealt with the "dangerous condition" of Commonwealth real estate, whereas the provision under consideration in the instant case relates to the care, custody and control of real property. Therefore, our prior constuction of the term "dangerous condition" is not dispositive of different language which confronts us in this case.

classification for the unequal distribution of benefits or imposition of burdens. *Commonwealth v. Webster,* 462 Pa. 125, 337 A.2d 914 (1975). Here the classifications between accident victims who undergo pain and suffering and die from their injuries or undergo permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses exceed $1,500 and those victims who experience pain and suffering and survive without the enumerated permanent consequences is a serious distinction.

However, the inquiry is not concluded with the discovery of unequal treatment. Absent, as here, an invidious discrimination against a suspected class or a fundamental right burdened, a legislative classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson,* 411 U.S. 677 (1973).

When applying the rational relationship test to the Act challenged here, we must keep in mind that the test requires only that the classification rest upon some ground of difference having a fair and substantial relationship to the object of the legislation. Our examination of the Act directs us to the conclusion that its purpose is to establish certain limits to the liability to which political subdivisions become exposed as a result of the abrogation of the doctrine of governmental immunity by the holding in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973). More specifically, the Act was an attempt to stabilize the political subdivision's ability to obtain insurance coverage by defining the risks to be covered.

Accordingly, we determine that the classifications involved in the Act have a fair and substantial relationship to the purpose of the Act. The classifications create a threshold for the recovery of certain damages

and thus serve to define clearly the extent of the risk. Therefore, we cannot conclude that there is no rational relationship to a legitimate governmental interest and must conclude that the classifications of the Act should be sustained and appellants' equal protection arguments be rejected.

Appellants also contend that the Act contravenes the Pennsylvania Constitution because there is no constitutional provision granting the legislature the power to limit suits against political subdivisions. Appellants direct our attention to the argument that the elimination of a tort remedy for some accident victims denies them free access to the courts to redress an injury done them, as guaranteed by Article I, Section 11 of the Pennsylvania Constitution.[4]

However, a person has no property, no vested right, in any rule of common law. Rights of property which have been created by the common law cannot be taken away without due process. Nevertheless, the law itself, as a rule of conduct, may be changed at the will, or even the whim, of the legislature, unless prevented by constitutional limitations. The great office of statutes is to remedy defects in the common law as they are developed and to adapt it to changes of time and circumstances. *See Munn v. Illinois,* 94 U.S. 113 (1877); *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975).

Therefore, nothing in Article I, Section 11, prevents the legislature from extinguishing a cause of action. *Jackman v. Rosenbaum Co.,* 263 Pa. 158, 106 A. 238 (1919), *aff'd,* 260 U.S. 22 (1922). In the act here under consideration, the class for whom the tort is abolished is all victims of the designated negligence of political subdivisions who do not sustain the re-

---

[4] The relevant portion of Article I, Section 11, reads: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

quired severity of injury. This abolition is complete and thus does not conflict with and is not in violation of Article I, Section 11. *See Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955).

As to the constitutional issue that the $500,000 limitation on damages contained in Section 402 of the Act[5] is not permitted by the provisions of Article III, Section 18 of the Pennsylvania Constitution,[6] we are mindful that our Supreme Court has consistently held that we should not decide a constitutional question unless absolutely required to do so. *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648 (1977); *Lattanzio v. Unemployment Compensation Board of Review,* 461 Pa. 392, 336 A.2d 595 (1975); *Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 244 A.2d 1 (1968). This position was again followed by our Supreme Court in the recent case of *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80 (1980).

In light of our disposition that the complained of activities of the School District do not fall within the ambit of conduct which imposes liability upon it pursuant to Section 202(b)(3) of the Act, we express no view on appellants' claims that the damage provisions of the Act are unconstitutional. *See* 1 Pa. C. S. §1925.

Order affirmed.

### ORDER

AND NOW, this 16th day of December, 1981, the order of the Court of Common Pleas of Allegheny County, dated November 3, 1980, granting the Penn

---

[5] *Formerly* 53 P.S. §5311.402, repealed by Section 333 of the Act of October 5, 1980, P.L. 693. A similar provision is now found at 42 Pa. C. S. §8553(b).

[6] The relevant portion of Article III, Section 18, reads: "[T]he General Assembly [shall not] limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in case of death from such injuries, the right of action shall survive. . . ."

258

Hills School District's motion for summary judgment, is hereby affirmed.