Robert P. **DUFFY**, et al.

v.

**CITY OF PHILADELPHIA**, et al.

Civ. A. No. 82–4543.

United States District Court,
E.D. Pennsylvania.

Oct. 6, 1983.

---

Stephen T. Saltz, Robert C. Daniels, P.C., Philadelphia, Pa., for Robert and Lynne Duffy.

Stephen I. Kasloff, Kleinbard, Bell & Brecker, Philadelphia, Pa., for E.J. Burke Sec. Systems, Inc.

John H. Wollman, West Chester, Pa., for City of Philadelphia and Philadelphia Eagles Football Club.

## MEMORANDUM

GILES, District Judge.

In this diversity action, plaintiff has sued various defendants for alleged assaults and batteries suffered by him in the course of leaving a Philadelphia Eagles/Dallas Cowboys football game on November 1, 1981. The first assault and battery allegedly occurred on the exit ramps inside Veterans Stadium. A second assault and battery occurred outside on the podium, a 360 degree circular walkway around the Stadium. The City of Philadelphia has moved for summary judgment on the ground that no special relationship existed between the City and plaintiff which gave rise to a duty to provide adequate police protection. The City also argues that plaintiff's claim is barred by the Political Subdivision Tort Claims Act, 42 Pa.Cons.Stat.Ann. § 8541 *et seq.* For the reasons which follow, the City's motion will be granted.

The essence of plaintiff's claim against the City is that it failed to provide him with adequate police protection during and after the football game at Veterans Stadium. Veterans Stadium is owned and operated by the City which leases it to the Philadelphia Eagles Football Club. The general rule is that a municipality, acting in its governmental capacity for the protection of the public, will not be held liable for its failure to provide adequate police protection to a particular individual absent some special relationship. *See Turner v. United States,* 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291 (1919); *Evers v. Westerberg,* 38 A.D.2d 751, 329 N.Y.S.2d 615 (1972); *Brogan v. City of Philadelphia,* 346 Pa. 208, 29 A.2d 671 (1943); *Chapman v. City of Philadelphia,* 290 Pa.Super. 281, 434 A.2d 753 (1981); *Berlin v. Drexel University,* 10 Pa.D. & C.3d 319 (1979). To fall within the exception to this general rule, plaintiff must demonstrate that a special relationship or duty existed between him and the City. *Chapman,* 290 Pa.Super. at 283–84, 434 A.2d 753.

Plaintiff contends that he was a business invitee on property owned and controlled by the City, that the City assumed a duty to provide adequate protection by assigning a number of police to patrol inside the Stadium, but that it did so negligently. This, however, is not sufficient to raise an issue of material fact concerning the existence of a special relationship. As pointed out by the City, a special relationship is usually found to exist only in cases where an individual is exposed to a special or enhanced danger different from the circumstances encountered by the public in general, and the authorities undertake responsibility to provide that individual with protection from the special danger. *See e.g., Swanner v. United States,* 309 F.Supp. 1183 (D.C.Ala.1970) (U.S. held to owe special duty of protection to undercov-

er agent involved in investigation); *Keane v. City of Chicago,* 98 Ill.App.2d 460, 240 N.E.2d 321 (1968) (no special duty owed to teacher attacked by student); *Simpson's Food Fair, Inc. v. City of Evansville,* 149 Ind.App. 387, 272 N.E.2d 871 (1971) (no special duty owed to retail grocer who was forced out of business by alleged failure of police to halt wave of criminal activity); *Schuster v. City of New York,* 5 N.Y.2d 75, 154 N.E.2d 534, 180 N.Y.S.2d 265 (1958) (special duty arises once it reasonably appears that persons who assist in arrest or prosecution of criminals are themselves in danger due to assistance); *Riss v. City of New York,* 27 A.D.2d 217, 278 N.Y.S.2d 110 (1967), *aff'd,* 22 N.Y.2d 579, 240 N.E.2d 860, 293 N.Y.S.2d 897 (1968) (no special circumstances existed where victim of vicious assault had repeatedly requested police protection which was refused); *Jones v. County of Herkimer,* 51 Misc.2d 130, 272 N.Y.S.2d 925 (1966) (motion to dismiss denied where recovery sought for death of woman killed by assailant in the village offices where she sought sanctuary from assailant and police knew assailant had threatened and assaulted her previously on numerous occasions).

Thus, the fact that plaintiff was assaulted while a business invitee and the City undertook to provide some level of protection, does not, by itself, create a special relationship. There is no indication that plaintiff was exposed to a special danger which the police were aware of or undertook to prevent. Rather, like other members of the general public attending the game, plaintiff was exposed to the arguably dangerous conditions which prevail in a large and enthusiastic football crowd where alcoholic beverages are bought and consumed. *Cf. Chapman v. City of Philadelphia* (no special relationship existed where plaintiff's decedent was assaulted on railroad station platform protected by Philadelphia police even though a particularly dangerous area). *But see Eisman v. Port Authority Trans Hudson Corp.,* 96 Misc.2d 678, 409 N.Y.S.2d 578 (1978) (defendant's duty as common carrier to provide protection for its passengers sufficient

to deny motion to dismiss where plaintiff assaulted in defendant's railroad station).

Plaintiff's claim presents precisely the kind of situation where courts, absent statutory authority, have been unwilling to impose additional burdens on the limited police resources of a municipality. *See e.g., Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969); *Bass v. City of New York,* 38 A.D.2d 407, 330 N.Y.S.2d 569 (1972), *aff'd,* 32 N.Y.2d 894, 300 N.E.2d 154, 346 N.Y.S.2d 814 (1973). This court will not impose such a burden here based on a theory that the City of Philadelphia owed a special duty to plaintiff, a business invitee, and will grant the City's motion on this basis.

The City argues alternatively that plaintiff is statutorily barred from any recovery based on the Political Subdivision Torts Claim Act, 42 Pa.Cons.Stat.Ann. § 8541 *et seq.* This Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency ...." 42 Pa.Cons.Stat.Ann. § 8541. The Act enumerates eight exceptions to this general rule of immunity, the most applicable of which states in relevant part:

(b) Acts which may impose liability. The following acts by a local agency or any of its employees may result in the imposition of liability on the local agency:

. . . .

(3) Real property.—The care, custody or control of real property in the possession of the local agency ....

42 Pa.Cons.Stat.Ann. § 8542(b)(3). Plaintiff argues that this case comes squarely within the concepts of care, custody and control of real property since plaintiff was injured while a business invitee on premises owned, possessed and operated by the City of Philadelphia.

There are few cases defining the scope of this exception. Two cases decided by the Commonwealth Court of Pennsylvania provide guidance. Both involved damage suits against a school district on behalf of students who were injured by fellow class-

mates in an unsupervised classroom. In *Robson v. Penn Hill School Dist.,* 63 Pa. Commw. 250, 437 A.2d 1273 (1981), plaintiffs asserted that the alleged negligent conduct of the school district was directly related to the care, custody and control of real property and thus fell within the exception to the Tort Claims Act.[1] The *Robson* court characterized the activity complained of as the "supervision of students." 437 A.2d at 1275. It then reasoned "that it would be a total distortion of the language of Section 202(b)(3) to allow the supervision, or lack of supervision, of school children to fall within the scope of care, custody and control of real property." In *Close v. Voorhees,* 67 Pa.Cmmwth. 205, 446 A.2d 728 (1982), the Commonwealth Court, relying on *Robson,* affirmed the lower court's decision not to hold the school district liable for the stabbing of a student in an unsupervised classroom.

■ Although the facts of this case are distinguishable from those in *Robson* and *Voorhees,* a reading of plaintiff's allegations leads this court similarly to conclude that the activity complained of vis-a-vis the City can be fairly characterized as the negligent supervision by police of unruly patrons at Veterans Stadium. Paragraph fourteen (14) of the complaint states, *inter alia,* that defendants were negligent in: failing to control properly and adequately the crowd of persons attending the sporting event; allowing persons possessing weapons to enter and remain in Veterans Stadium; allowing alcoholic beverages to be consumed at football games at Veterans Stadium and allowing persons to become unruly at said game without properly controlling them. Although other allegations are made regarding the care and control of the stadium itself, the thrust of the allegations, and indeed the injuries of which plaintiff complains, is that the police failed

to control the crowd and, in particular, the persons who assaulted him.

Taking a "common sense" approach, *see Robson* at 1275–76, it would similarly be a distortion of the language in exception § 8542(b)(3) to allow the lack of police protection at a large sporting event to fall within the scope of care, custody and control of real property. Arguably, this is a narrow construction of the statutory language. However, if a school district is not liable for supervision of all students at every moment in a classroom, where close supervision is generally the required norm, then the City, by the actions of its police officers, should not be held liable for failing to protect adequately all patrons of a professional football game held at a large stadium.[2] If such is the intent of the exception relied upon by the plaintiff to impose liability, the Pennsylvania legislature would make it clear.

Accordingly, for these reasons, the City's motion for summary judgment will be granted.

An appropriate order follows.

---

**1.** The language of the exception at issue in *Robson* has since been modified but not in any significant respect.

**2.** This is particularly true where, as here, the City had leased the Stadium to the Philadelphia

Eagles and thus, can be said to have relinquished its exclusive duty of care, custody or control over the property as evidenced by the fact that additional security for the game was provided by private companies.