## Garman v. Conemaugh Township School District

*James B. Yelovich,* for plaintiffs.
*Dennis J. Stofko, Thomas R. Strayer,* for defendant.
*Michael W. Burns,* for additional defendant.

COFFROTH, *P.J.,* March 6, 1984 — This trespass action for damages for personal injury is here on the motion of the original defendants for summary judgment, asserting immunity of said defendants from liability under the Political Subdivision Tort Claims Act, Judicial Code 42 Pa.C.S.A. §§854 et seq.

### FACTS

On or about January 21, 1981, minor plaintiff, a student in defendant school district, was injured while using a woodshaper in the industrial arts shop class supervised by defendant Burnworth. The complaint grounds the claim for damages on alleged "negligent, wilful, wanton and reckless conduct and/or misconduct of the defendants. . . . in failing to enclose the cutting heads of the woodshaper", in failing to instruct and supervise students properly, and in failing to maintain a "risk management program". The answer makes only the general denial required in trespass actions, and the new matter asserts statutory immunity. Defendants then joined defendant Boice Crane Company, manufacturer and seller of the woodshaper machine, alleging negligence in designing and manufacturing the ma-

chine, failing to warn of dangers, and strict liability in tort and contract (breach of warranty) for defective product. The additional defendant filed a responsive answer with new matter not here relevant.[1]

The motion for summary judgment is accompanied by an affidavit of an industrial arts teacher in defendant school district stating that the machine in question ". . . for a period of time was free standing on the shop floor, and the OSHA inspector ordered the defendant school district to replace the four (4) screws through the Boice Crane woodshaper's legs and into the floor . . .", and is also accompanied by an affidavit of defendant Burnworth stating that shop equipment in defendant school district ". . . is moved from one area of the shop to another area of the shop and from one shop to another shop and is not permanently attached to the real estate." The assertions in those affidavits have not been contradicted.

## DISCUSSION

The precise question of law to be decided here is whether the acts of the school district and its employee in this case involved the care, custody or control of *real property* in the possession of the district, rather than the care, custody or control of *personal property* of the district, because the question of immunity from liability depends on that distinction under provisions of Subchapter C of Chapter 85 of the Judicial Code, §§8541 et seq, 42 Pa.C.S.A., originally enacted as the Political Subdivision Tort

---

1. A memo was filed on June 20, 1983, stating that additional defendant Boice Crane Company is no longer in existence, accompanied by a motion to quash service of summons, not here involved.

Claims Act (1978 P.L. 1399, No. 330, formerly 53 P.S. §§5311.101 et seq). The relevant provisions of the Code are §§8541, 8542(a) and (b) (2) and (3), which are as follows:

"§8541. *Governmental Immunity generally*"

"Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."

"§8542. *Exceptions to governmental immunity*"

"(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligence of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

"(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) *Vehicle liability*.—[omitted]

(2) *Care, custody or control of personal property*.—The care, custody or control of personal

property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

(3) *Real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of stream, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks."

[other subsections omitted]

From the foregoing it seems apparent that a local agency (government unit) is liable for injuries resulting from acts involving the care, custody or control of personal property only if the property belongs to others and is in possession or control of the agency, but is immune from liability for injuries resulting from acts involving the care, custody or control of personal property which belongs to the agency even though in the possession or control of the agency. Hence, if this shop machine, which is owned by the district, is personal property, governmental immunity applies even though the agency had possession and control of it at the time of injury, and we must dismiss the action as to both the agen-

cy and defendant Burnworth.[2] If, however, the machine is classified as real property within the meaning of §8542(b)(3) quoted supra, there is no governmental immunity for the injuries here involved and the action may proceed against both defendants.

Counsel for plaintiffs contends that the unguarded machine in the school shop was a dangerous condition on real property within the care, custody and control of the district for which the district has no immunity from liability, as provided in §8542(b)(3) supra. Counsel for defendants argues that under traditional concepts of property law, the machine in question was personal property, not a fixture of real property, and that defendants are therefore immune from liability.

Counsel for both parties concede that the judicial decisions under the statute thus far reported do not reach the precise issue here presented and are, therefore, not decisive. In Wimbish v. Penn Hills School District, 59 Pa. Commw. 620, 430 A.2d 710 (1981), a trespass cause of action was brought in behalf of the minor plaintiff against the school district for damages for personal injury resulting from alleged negligent failures of the district: to employ trained employees, to supervise its employees properly; and to promulgate and enforce appropriate rules and regulations, as a result of which the student was without prompt medical attention when he was injured in a school activity on school property — a football game in which he participated. Plain-

---

2. Code §8545 provides as follows:

"An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter."

tiffs argued that liability existed under Code §8542(b)(3) supra as involving acts related to the care, custody or control of real property. The court affirmed judgment on the pleadings in favor of the school district on the ground of governmental immunity, saying (59 Pa. Commw. at 624) that the claim ". . . is clearly outside the limited waiver for actions relating to the care and control of real property", and that (id, at 626):

"There is no indication whatever that the district was negligent in the care, custody or control of the property, and we cannot interpret the language . . . to waive immunity as to any unfortunate incident solely because it occurs upon the premises of the political subdivision."

In Robson v. Penn Hills School District, 63 Pa. Commw. 250, 437 A.2d 1273 (1981), the minor plaintiff was struck in his eye by a pencil thrown by a classmate while both were in attendance in 6th grade on school property, and while the class was unsupervised. Plaintiffs rested their claim on Code §8542(b)(3) supra as involving negligent conduct of the district directly related to the care, custody and control of real property. The court affirmed entry of summary judgment for the school district, saying (63 Pa. Commw. at 253-254):

"Our reading of the complaint leads us to the determination that the 'action or activity' complained of can be fairly characterized as the supervision of students. Therefore, we can only conclude that it would be a total distortion of the language . . . to allow the supervision, or lack of supervision, of school children to fall within the scope of care, custody and control of real property."

The court also pointed out in note 3 of the opinion that the language of §8542 (b)(3) does not reach a "dangerous condition" existing on school property;

the court also rejected the contention of unconstitutionality.[3]

In Close v. Voorhees, 67 Pa. Commw. 205, 446 A.2d 728 (1982), students became embroiled in an argument while in unsupervised study hall, in the course of which one student stabbed the other killing him. The court affirmed dismissal of the complaint on preliminary objections, holding that the district did not lose its immunity under the real property clause of Code §8542(b)(3) because of supervision or lack of supervision of school children on school property. The court also rejected the attacks on constitutionality, including equal protection, citing Carroll v. York County, 496 Pa. 363, 437 A.2d 394 (1981). In general accord is Munoz v. Philadelphia School District, 23 D.&C.3d 473 (1982).

Joos v. Plum School District, 131 PLJ 147 (1983), comes a bit closer to, yet is not nearly on all fours with, the instant case. There plaintiff student was injured while attending class on school property by a classroom table which was thrown at him by another student. The following averments were admitted: the desk, tables and chairs are necessary classroom equipment; they were not bolted or otherwise fastened to the classroom floor; classroom tables, desks and chairs have been bolted or fastened to the floor in some classrooms from time to time in the past; the furniture is not designed to allow bolting to the floor. Plaintiff contended that the district was negligent in the care, custody or control of real

3. Among the grounds advanced for unconstitutionality was that of equal protection; the court held that the statute had a fair and rational relationship to its purpose ". . . to establish certain limits to the liability to which political subdivisions become exposed as a result of the abrogation of the doctrine of governmental immunity . . ." (63 Pa. Commw. at 255).

property in its possession under Code §8542(b)(3). The court granted defendant district's motion for summary judgment in its favor, saying (148):

"This Court is not convinced by plaintiff's argument in its brief that the table should have been permanently attached to the ground and that if it were so attached it would have become 'realty' and, therefore, come within the exceptions to the sovereign immunity. Such an interpretation of the language of the Act is contrary to the intent of the legislature, to limit rather than expand liability. . ."

Although the contentions and rationale in the decision in the above case are similar to those involved here, two factual differences are immediately apparent: (1) there the harm-causing agency was the wrongful conduct of the other student and the district's negligence consisted in not controlling or supervising him, whereas in the instant case the harm-causing agency was the condition of the machine itself and the district's negligence was direct in allowing it in that condition, and (2) there the property directly involved was movable furniture not attached or required to be attached to the building, whereas here the property directly involved was in fact attached to the building and was by law required to be attached for safety reasons.

It is, of course, arguable that the phrase "care, custody or control of real property in the possession of the local agency" refers not merely to the realty itself but also to any act or activity occurring in the use of the realty; but that view has been rejected in all of the decided cases, which compels the conclusion that actionable negligence of the district in the care, custody or control of real property, must relate to some physical condition of the realty itself. Lewis v. Hatboro-Horsham School District, 77 Pa. Commw 287, 415 A.2d 1090 (1983). In the instant

case, the latter requirement is met, if the machine in question is real property within the meaning of §8542(b)(3).

The Judicial Code does not define "property", "real property" or "personal property". The Statutory Construction Act of 1972, §3 as amended, 1 PaCSA §1991, defines "property" as: "Includes both real and personal property", but does not define either "real property" or "personal property". The defense contends that, absent such a statutory definition, we should resort to traditional notions which govern the affixation of tangible personal property to land in the law of fixtures, and that application of conventional fixture law to the present controversy requires the conclusion that the machine in suit is not real property. We shall, therefore, briefly and in summary fashion state the principles of fixture law, as follows:

(1) "A fixture is an article of personal property which, because of its physical annexation to the soil or appurtenance, thereto, or because of its essential use in a specific business, has become part of the real estate, in legal contemplation." PLE, Fixtures §1. "Fixtures are articles which were personalty but which by being annexed to realty are regarded as a part thereof." CJS, Fixtures §1, page 587. "The term 'fixture' is applied to articles of the nature of personal property which have been affixed to land and which retain their separate identity." Id, page 588.

(2) "Whether or not equipment, furnishings, and other similar property are to be regarded as separate personal property or as part and parcel of the real estate . . . depends upon whether or not under all the circumstances such property can properly be said to have been incorporated into the freehold by the one installing it or placing it upon the prem-

ises." Summary of Pennsylvania Jurisprudence, Real Property II §264. "What constitutes a fixture depends upon the facts and circumstances of the particular case, including the relationship of the parties, and is determined by the united application of the requisites, annexation, adaptation, and intention." CJS, Fixtures §1 page 587.

((3) ". . .[W]hether articles are fixtures depends on the nature and character of the act by which they have been put in place, the policy of the law and the intentions of the parties." PLE, Fixtures §1, page 329. "In determining whether or not property should be regarded as incorporated into the freehold when it has been placed upon the land, consideration must be given to: (1) the intention of the one who placed the article on the land; (2) the character of the article as related to the use to which the land is devoted; and (3) the nature or mode of the annexation." Summary of Pennsylvania Jurisprudence supra §264. Accord: CJS supra §1 page 591.

(4) The general rules of fixture incorporation are these:

"§265. Application where property cannot be severed from realty without structural damage — General Rule.

"Where chattels are so physically annexed to the land that they cannot be removed without material injury to the land or to some structure thereon, they are necessarily deemed to be incorporated into the realty. Under these circumstances, the chattels become part of the land without regard to any other additional circumstance, the law applying the maxim that whatever is annexed to the soil becomes a part thereof."

"§267. Application where property is removable without structural damage — Nonindustrial buildings.

"Whether or not articles such as gas or electric stoves, hot-water heaters, oil burners, or electric lighting fixtures which are placed in a nonindustrial building and are removable without damage to the building are to be regarded as part of the real estate depends upon the intent with which such articles were placed on the premises gathered in the light of all the surrounding circumstances.

"If the person so placing such articles in the building intended them as permanent improvements to the property, they become part of the real estate notwithstanding the fact that they are susceptible of being removed without substantial injury to the physical structure of the building. In this connection, prima facie an owner of the property is deemed to intend property placed there which is normally thought of as a permanent addition to the building, as a part thereof."
From Summary of Pennsylvania Jurisprudence, supra, §§265 and 267.[4]

(5) An exception to the general rules stated in Paragraph (4) supra exists with respect to trade fixtures in an industrial plant as follows:

". . . [C]hattels placed in an industrial establishment for permanent use and necessary to the operation of the plant become fixtures, irrespective of whether they are physically attached to the realty [and] . . . the question of whether an asserted chattel may be removed without serious danger to the remaining freehold is irrelevant." PLE, supra §2 page 333.
The industrial plant exception is grounded on "an inference originally based on the supposed inten-

---

4. Uniform Commercial Code 13 PaC.S.A., §9313, states a special rule in secured transactions for fixtures, not here applicable.

tion of the parties to a mortgage transaction [which] has crystallized into a rule of law predicated on the desirability of protecting the safety of investments." PLE, supra §2 pages 332-333. The rule is applied where the chattels are placed in the plant building by the building owner, not as between landlord and tenant. See Summary of Jurisprudence supra §268.

In the instant case, the record establishes that the machine in question was easily removable without structural damage to the building, so that under the general rule of fixture law it would not be real property. Although the school shop is not an industrial plant as such, it is similar and can easily be analogized thereto because the machine is a permanent and essential part of the operating industrial shop, in which case it may be properly be treated as part of the real estate.

Although it is true that technical legal terms used in the statute without special or precise definition are "in the absence of countervailing intent, to be taken in their established common law significance", Rosenthal v. Board of Pharmacy, 3 Pa. Commw. 621, 624, 284 A.2d 846 (1971), and that the term "real property" might be regarded as such a technical legal term, see Commonwealth v. Hicks, 365 Pa. 153, 154 (1950), its legal meaning is extremely flexible depending usually on intention of the parties under a contract or in a transaction involving a controversy over ownership or rights in private property, or on the meaning of the term in a statute according to legislative intent and purpose. Underlying all such controversies is public policy or, as described in PLE Fixtures §1 page 329 quoted supra, "the policy of the law". Thus the term "real property" as used in a statute may be defined in different ways for different purposes. See CJS, Property §16a. Words, like people, are known by the com-

pany they keep. Devlin v. Osser, 434 Pa. 408, 412 (1969); Manion Coal Company v. Berkey, 26 Somerset L.J. 174, 179 (1970). Thus, in Commonwealth v. Hicks, supra, the term "real property with an assessed valuation" in a statute does not include all tangible assets, but only such real estate as "is normally given an assessed valuation" (155). Taxing statutes requiring assessment and taxation of "all real estate" do not include the land of public utilities, out of historical and public policy considerations. Philadelphia Rural Transit Company v. Philadelphia, 309 Pa. 84 (1932). But the term "real property" in taxing statutes includes all machinery of an industrial plant "whether fast or loose". See: Defense Plant Corporation Tax Assessment Case, 350 Pa. 520, 522 (1944); Homestead Borough v. Defense Plant Corporation, 356 Pa. 500 (1947). The rules of fixture law were developed mainly for use in determining private property rights between vendor and purchaser, landlord and tenant, mortgagor and mortgagee, and the like. The considerations and policies which are vital in such transactions have very little relevance in determining public policy and legislative intent in allocating governmental immunities from liability as between real and personal property. Hence, we should, if we can, disenthrall ourselves of notions made for other controversies, and think anew.

It seems to us that two of the three factors found controlling in conventional fixture law in property ownership controversies — intent of the party making the placement and the nature or mode of annexation — are irrelevant in determining whether the wrongful conduct in the care, custody or control of an article of personal property placed upon land or in a building of a municipality should render the municipality liable for resulting harm. But the re-

maining factor — the character of the article as related to the use to which the land is devoted — is the important, perhaps decisive, factor, in light of the fact that the legislature makes the distinction between personalty and realty so important in §8542(b)(2) and (3) of the statute. Our view is that whenever attachment of an article of personal property is virtually indispensable to the proper use of the article or of the land or building, the article should be treated as real property within the meaning of §8542(b)(3). Here, attachment of the machine may not be essential to its operation, but is essential to its proper (safe) operation under governmental regulation and hence is real property for liability purposes, even though the fact or mode of attachment is not causually related to the injury. In the same vein, such attachment is also essential to the proper use of the building as a place for the machine's use. When one has a legal duty to use reasonable care to avoid harm from his care, custody or control of land and building, and no such duty with respect to its own personal property in its possession, it is reasonable to extend the duty to include such of its own personal property necessarily attached to the building regardless of the character of the attachment.

There is, of course, ambiguity in the statute's use of the term "real property". Part of our thinking is that ambiguity in this particular statute should be resolved in favor of liability rather than in favor of immunity. Although it is easily arguable on technical grounds that the statutory exceptions to immunity should be strictly construed in favor of the general rule of immunity, that is an artificial canon which has validity only if it advances legislative purpose and intent. It is easily arguable, too, that the legislative purpose here was restrictive (to limit li-

ability), not remedial (to expand liability), as stated by the Court in Joos v. Plum School District quoted ante (see also Robson v. Penn Hills School District quoted in note [3] ante). It seems to us that no matter whether the statute is viewed in relation to the state of the law prior to the judicial decisions abolishing judicially created immunity, or to post-abolition law, the enumerated instances in which immunity is waived represent such a major liberalization of thinking as respects governmental immunity as to be remedial in purpose, consistent with the Supreme Court's rationale in the abolition decisions. The enumerated instances in the statute waiving immunity are clearly designed partially to set aright the "unfair doctrine" of sovereign immunity, Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 386, 388 A.2d 709 (1978), its "manifest unfairness", id 479 Pa. at 406, " 'an anachronism without rational basis. . .' ", Ayala v. Philadelphia Board of Education, 453 Pa. 584, 597, 305 A.2d 877 (1973). "The basic reason for judicial abolition of tort liability immunity of government is the injustice the immunity perpetrates upon a victim of governmental wrongdoing." Hetz v. Lottig, 37 Somerset L.J. 93, 97 (1979).[5]

5. Although the statute necessarily speaks from its effective date, §5 of the companion Act of 1978-152 (see Historical Note to 42 PaC.S.A. §8522), similarly restores partial immunity to the Commonwealth retroactively to the date of judicial abolition of immunity, which clearly evidences that the legislature viewed its enactment in terms of pre-abolition law, thus intending the enumerated waivers as remedial. This conclusion is valid notwithstanding subsequent judicial invalidation of retroactivity in Gibson v. Commonwealth, 490 Pa. 156, 415 A.2d 80 (1980). The two statutes have a common purpose.

Moreover, the rationality of the legislative distinction between: (1) liability for the care, custody or control of any real property in possession, and (2) nonliability for the care, custody or control of its own personal property in possession, as distinguished from (3) liability for the care, custody or control of personal property of others in possession, is far from perspicuous. Although the specific constitutional authority for legislative adoption of governmental immunity apparently saves it from unconstitutionality despite its obvious injustice and irrationality, see Carroll v. York County, supra, the facts of injustice and irrationality remain to support the principle of construction here advocated which resolves legislative ambiguities in favor of liability, that is, in favor of justice to the victim of governmental wrongdoing.

Remedial statutes must be liberally construed to accomplish their purpose, 1 PaC.S.A. § 1928, that is, to " 'suppress the mischief and advance the remedy' " by changing the contrary state of law previously existing " 'if it can be done by reasonable construction in favor of the object' ". Wright v. Barber, 270 Pa. 186, 189 (1921).

Thus, to the extent the complaint pleads that plaintiffs' losses resulted from negligent failure to enclose the cutting heads of the machine, it states a cause of action.

## ORDER

Now, March 6, 1984, defendants' motion for summary judgment is denied. The case shall be placed on the next issued Civil Trial List.