**Rhoads v. Lancaster City Parking Authority**

*James E. Beasley,* for plaintiff.
*Albert J. Schell, Jr.,* for defendant.

PEREZOUS, *J.,* October 4, 1984 — This memorandum opinion is filed in support of the order entered September 24, 1984.

Before the court is defendant Parking Authority of the City of Lancaster's (hereinafter Parking Authority) motion for summary judgment.[1] In this case plaintiff, Daniel Rhoads, was abducted on September 11, 1981, while a patron of the Prince Street Garage which is managed by the Parking Authority. Plaintiff was seriously injured in this criminal attack and instituted suit to recover damages on the theory that the Parking Authority failed to provide

1. Summary judgment was entered on September 13, 1984, in favor of the City of Lancaster on the grounds that it had relinquished control and operation of the parking garage in question to the Parking Authority. Futhermore, a parking authority cannot be deemed to be an instrumentality of the municipality creating it. 53 P.S. §345(a).

proper security. The defense raised by the instant motion, briefly stated, is governmental immunity.

According to Pa.R.C.P. 1035(b), summary judgment may only be rendered if there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. The standard by which a case can thus be considered for such summary disposition has been otherwise stated as being applicable only in the "clearest of cases". Kotwasinski v. Rasner, 436 Pa. 32 258 A.2d 865 (1969). With this principle in mind we can now address the present situation.

In 1973, the Supreme Court of Pennsylvania abolished the doctrine of governmental immunity with respect to local governmental units in the case of Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A.2d 877 (1973). The Pennsylvania Legislature then reinstated the immunity of political subdivisions in the Political Subdivision Tort Claims Act (42 Pa.C.S. §8541 et seq.) This act was repealed and reenacted in 1980 as 42 Pa.C.S. §8542. While many sections of the act were reenacted verbatim, the new legislation changed the definition of the entities entitled to the protection of that act. The 1980 act used the narrowly defined term, "local agency", which was defined to be "a government unit other than the Commonwealth government. The term includes an intermediate unit", 42 Pa.C.S. §8501.

The Judicial Code also defines "governmental agency" as any Commonwealth agency or any political subdivision or municipal or other local authority or any officer or agency of any such political subdivision or local authority.[2] When this definition is

---

2. 42 Pa.C.S. §102.

juxtaposed with the definition of "government unit" it is evident that the legislature intended a broad application covering any type of governmental body. This would certainly include a government entity such as a parking authority. The term "local agency" therefore includes all governmental units in the Commonwealth except those of the state which are specifically excluded.

The Parking Authority's next point is that its actions in the case at hand, even if amounting to negligence, did not fall within any of the exceptions to the general governmental immunity thus granted to local agencies and, more specifically, under that exception imposing liability for "the care, custody or control of real property".[3] Although not advanced in behalf of the Parking Authority, it could conceivably be an agency of the Commonwealth under the Parking Authority Law[4] and thereby gain immunity by virtue of sovereign immunity under 42 Pa.C.S. §8522. As will be seen, however, defendant is entitled to immunity under either theory since the cases interpreting governmental immunity could be applicable by analogy to sovereign immunity.

In a recent pronouncement on the real property exception to governmental immunity, our Commonwealth Court noted that the section must be read as a narrow exception to a general legislative grant of immunity. Vann v. Board of Education of the School District of Phila., 76 Pa. Commw. 604, 464 A.2d 684 (1983). The Vann Court would apply the real property exception only in certain limited instances:

". . . [W]e construe it to impose liability only for negligence which makes government-owned prop-

3. 42 Pa.C.S. §8541, 8542.
4. 53 P.S. §345(a).

erty unsafe for the activities for which it is generally used, for which it is intended to be used, or for which it may be reasonably foreseen to be used. Violent criminal acts such as occurred here are not a reasonably foreseeable use of school property such that the exception will be applied." Id., 464 A.2d at 686. Moreover, in a footnote the court pointed out that it did not read the statute as imposing a greater standard of liability in cases of this kind than that to which private landowners are held.

The court has examined other Pennsylvania cases alleging failure to provide proper security in conjunction with the care, custody or control of real property and has determined no authority for not granting summary judgment to defendant: Claim that school district failed to employ trained personnel and failed to supervise its employees properly, resulting in plaintiff's injury while playing in a football game — Wimbish v. School District of Penn Hills, 59 Pa. Commw. 620 430 A.2d 710 (1981); claim that school failed to properly supervise students whereby plaintiff was injured in the eye by pencil-throwing incident, Robson v. Penn Hills School District, 63 Pa. Commw. 250, 437 A.2d 1273 (1981); alleged failure to protect student's safety and to supervise other students where plaintiff stabbed another student, Close v. Voorhees, 67 Pa. Commw. 205, 446 A.2d 728 (1982); same type of claim where student was victim of assault, Auerbach v. Council Rock School District, 74 Pa. Commw. 507, 459 A.2d 1376 (1983); claim that county facility was negligent in the care and supervision of elderly patients when one wandered off during an institution activity and subsequently died from exposure, Morris v. Montgomery County Geriatric and Rehabilitation Center, 74 Pa. Commw. 363, 459 A.2d 919 (1983).

A recent federal court opinion offers perhaps the most damaging assessment to plaintiff's claim regarding the Parking Authority's duty to provide proper security or supervision. In Duffy v. City of Philadelphia, 580 Fed. Supp. 164 (1983), a spectator was injured by alleged assaults and batteries in the course of leaving a Philadelphia Eagles/Dallas Cowboys football game at Veterans Stadium. The thrust of his claim was that the police failed to control the crowd and, in particular, the persons who caused his injuries in that the city assumed a duty to provide adequate protection by assigning a number of police to patrol the stadium but that it was negligent in so performing since persons were allowed to consume alcoholic beverages and become unruly.

In language which is equally applicable to the present case, the memorandum opinion for the Eastern District stated that there was no indication that plaintiff was exposed to a special danger of which the police were aware or undertook to prevent. The opinion refused to apply the exception to immunity of the Judicial Code[5] to a large sporting event while conceding that, arguably, this was a narrow construction of the statutory language. The court further observed:

"However, if a school district is not liable for supervision of all students at every moment in a classroom, where close supervision is generally the required norm, then the city, by the action of its police officers, should not be held liable for failing to protect adequately all patrons of a professional football game held at a large stadium. If such is the intent of the exception relied upon by the plaintiff to impose

5. 42 Pa.C.S. §8542(b)(3).

liability, the Pennsylvania legislature would make it clear." Id., at 167.

Equating the case under consideration with the above rationale, it is evident that the present factual circumstance should produce a similar legal effect. Although plaintiff sustained grievous bodliy injury as a result of this unfortunate incident, it can neither be said that it was foreseeable or that it arose out of the intended use of the parking garage. Consequently, the order of September 24, 1984, is confirmed.