## Buhner v. Neshaminy School District

*Joseph Mistrano,* for plaintiff.
*Peter A. Glascott,* for defendant.

SOKOLOVE, *J.,* July 22, 1988 — Plaintiff Henry R. Buhner has appealed to the Commonwealth Court of Pennsylvania from our order of February 24, 1988 granting summary judgment in favor of defendant Neshaminy School District. We write this opinion pursuant to Pa. R.A.P. 1925 to explain the reasons for our order.

In reaching our decision we were cognizant of the strict requirements which must be met to enter

summary judgment. Summary judgment should not be entered unless the case is free from doubt. *Hower v. Whitmak Associates*, 371 Pa. Super. 443, 538 A.2d 524 (1988); *Weiss v. Keystone Mack Sales Inc.*, 310 Pa. Super. 425, 456 A.2d 1009 (1983). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa. R.C.P. 1035(b). In considering a motion for summary judgment, the record must be examined in a light most favorable to the non-moving party. All well-pleaded facts in the non-moving party's pleadings are accepted as true, and that party is given the benefit of all reasonable inferences to be drawn therefrom. *Hower v. Whitmak Associates, supra; Spain v. Vicente*, 315 Pa. Super. 135, 461 A.2d 833 (1983). We applied these legal standards to the case before us and concluded without hesitation that summary judgment in favor of the school district was appropriate.

Our examination of the record in the light most favorable to plaintiff reveals that plaintiff was seriously injured on April 5, 1984 while participating in gym class on school district premises. The teacher, a school district employee, asked for volunteers to move volleyball nets and poles into position on the gym floor. Plaintiff and three other students volunteered. Each volleyball pole rested in a socket in a circular, heavily weighted base, which was supposed to be attached to the pole by at least three bolts or pins. The pole could be moved by tilting it at an angle to enable wheels on the base to roll along the ground. The pole and base constituted a freestanding unit, unattached to the gymnasium. While plaintiff and another student were attempt-

ing to move a pole, the pole slipped from its base because there were no bolts or pins securing it, and the heavy base crushed plaintiff's right foot.

In his complaint, plaintiff alleged that the school district was negligent or reckless, in essence, for failing to adequately supervise the moving of the pole, for failing to properly inspect the pole, for failing to warn of the dangers in moving the pole, for failing to warn plaintiff to stand clear of the base and for maintaining the pole in a dangerous and defective condition.

The school district moved for summary judgment on the basis that it is immune from liability under the Political Subdivision Tort Claims Act, 42 Pa. C.S. §8541 et seq. and that plaintiff had failed to give proper notice of his injury under 42 Pa. C.S. §5522. We rejected the latter argument and made our decision only on the issue of immunity.

The act establishes general governmental immunity:

"Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any of the local agency or an employee thereof or any other person." 42 Pa. C.S. §8541. A local agency is defined as a government unit other than the commonwealth government. 42 Pa. C.S. §8501. There is no doubt that the school district is a local agency protected by the act. See *Vince v. Ringgold School District*, 92 Pa. Commw. 598, 499 A.2d 1148 (1985). The act waives general sovereign immunity for negligent acts in eight specific areas. 42 Pa. C.S. §8542. Only the personal property and real property exceptions are possibly applicable to the instant facts.

The personal property exception provides for liability for the "care, custody or control of personal

property of others in the possession or control of the local agency." 42 Pa. C.S. §8542(b)(2). Plaintiff concedes that the volleyball pole was owned by the district and was, therefore, not the "personal property of others" so as to fall within this exception. See *Zelenevich v. New Hope-Solebury School District*, 30 D. & C. 3d 252, (1984).

The real property exception imposes liability upon the school district for the care, custody or control of real property in its possession. 42 Pa. C.S. §8542(b)(3). Plaintiff's claims of negligence for inadequate supervision and failure to warn must fail under this section. As the Commonwealth Court stated in *Messina v. Blairsville-Saltsburg School District*, 94 Pa. Commw. 100, 503 A.2d 89, (1986):

"It would be a total distortion of the language of section 202(b)(3) (now 42 Pa. C.S. §8542(b)(3)) to allow the supervision, or lack of supervision, of school children to fall within the scope of care, custody and control of real property. *Robson v. Penn Hills School District*, 63 Pa. Commw. 250, 253, 437 A.2d 1273, 1275 (1981)." *Messina* at 102, 503 A.2d at 90.

Plaintiff argues that the real property exception should include the school district's negligence in maintaining the vollyball pole in an unsafe and defective condition. First, he contends that the volleyball pole was a fixture and, therefore, part of the real estate. Second, he asserts that even if the volleyball pole is not considered real property, its defective condition rendered the gymnasium, or real property, unsafe for its intended use. We will address these arguments seriatim.

In our consideration of the pole as a fixture, we are guided by long-standing common law in Pennsylvania.

"Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. . . . Second, those which are so annexed to the property, that they cannot be removed without material injury to the real estate or to themselves; these are realty. . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of annexation. . . ." *Canon—McMillan School District v. Dioni*, 110 Pa. Commw, 584, 533 A.2d 179 (1987), quoting *Beardell v. Western Wayne School District*, 91 Pa. Commw. 348, 353-4, 496 A.2d 1373, 1376 (1985), which quoted *Clayton v. Lienhard*, 312 Pa. 433, 436-7, 167 Atl. 321, 322 (1933). The volleyball pole clearly fits within the first category. It was manifestly furniture. It was not annexed or physically connected with the property in any way. It was not peculiarly fitted to the property. Just as the court in *Brown v. Quaker Valley School District*, 86 Pa. Commw. 496, 486 A.2d 526 (1984), found that a springboard and vaulting horse were items of moveable equipment, not fixtures, we find that the volleyball pole was personal, not real, property. We adopt the reasoning of the Commonwealth Court in *Vince v. Ringgold School District, supra,* where a student was injured while moving a piano on school district property.

"A piano, regardless of its condition is not real property. . . . A piano is personalty. The piano was not converted to a part of the real property by its

dangerous condition; were such the case every item of personalty would become real property when it became hazardous, thus totally circumventing the purposes of the Political Subdivision Tort Claims Act." *Id.* at 601, 499 A.2d at 1149.

Plaintiff insists that although the volleyball pole may not be a fixture in the traditional sense, it should be regarded as part of the real estate under the Assembled Industrial Plant Doctrine. We are not convinced that the doctrine should be applied to this situation, and, even if it were, it still would not transform the volleyball pole into real property.

Under the doctrine, if machinery, whether fast or loose, is vital to the business operation of an industrial plant and is a permanent installation therein, it is to be considered part of the real estate. *Singer v. Redevelopment Authority of the City of Oil City*, 437 Pa. 55, 59, 201 A.2d 594, 596 (1970). Plaintiff would have us expand this doctrine from industrial plants to all economic units, including schools. Then, he claims because a school's legal mandate is to provide required physical education, and the volleyball pole is a permanent piece of equipment indispensable to providing physical education, the pole must be part of the real estate.

Historically, the doctrine was utilized in cases involving manufacturing or industry for purposes of real estate taxation, mortgages, eminent domain, bankruptcy or execution upon property. See *Gottus v. Allegheny County Redevelopment Authority*, 425 Pa. 584, 229 A.2d 869 (1967). The Pennsylvania Supreme Court, in *Singer v. Redevelopment Authority of the City of Oil City, supra,* extended the doctrine to cover, not merely industrial plants, but all commercial, service and economic units for eminent domain proceedings. This new Assembled Economic Unit Doctrine was restricted to eminent

domain, however, and was not a general extension of the doctrine for all purposes as plaintiff suggests. We have found no Pennsylvania appellate decisions applying the doctrine to public schools in any situation or to any governmental entity to broaden the limited waiver of sovereign immunity. The statutory and public policy reasons, primarily economic, for the use of the doctrine in the aforementioned areas do not exist here. To the contrary, the courts have consistently held that the act creates narrow exceptions to the general abolition of immunity and must be strictly construed. *York Redevelopment Authority v. Keener*, 101 Pa. Commw. 464, 516 A.2d 832 (1986); *Vann v. Board of Education of School District of Philadelphia*, 76 Pa. Commw. 604, 464 A.2d 684 (1983); See *Davidow v. Anderson*, 83 Pa. Commw. 86, 476 A.2d 998 (1984). In light of the clear legislative intent to limit governmental tort liability, we will not increase that liability by employing a theory of questionable relevance.

Plaintiff has referred us to the case of *Garman v. Conemaugh Township School District*, 29 D. & C. 478 (1984) in which the Court of Common Pleas of Somerset County relied upon the doctrine to find that a school district was not immune for injury to a student by a woodshaper in industrial arts shop class. We refuse to follow this decision, which is not binding upon us. The case was factually distinct from the case sub judice. The court favorably compared the school shop to an industrial plant. Also, in the *Garman* case, an OSHA inspector had required the school to bolt the woodshaper to the floor. Thus, proper use of the woodshaper required its attachment to the real property. In the instant matter, the school gymnasium bears no resemblance to an industrial plant, and the volleyball pole is a mobile, independent piece of equipment. The pole has never

been affixed to the property and is not meant to be so affixed. Furthermore, we disagree with the express rationale of the *Garman* decision. Contrary to the appellate authority we have already cited, the court chose to liberally construe the act as a remedial statute, interpreting the term "real property" in favor of liability rather than immunity.

Even if we were to invoke the doctrine in this instance, we would not find the volleyball pole to be a fixture. The pole is not permanently placed at the school nor is it essential or vital to the operation of the school. See *Gore v. Bethlehem Area School District,* 113 Pa. Commw. 394, 537 A.2d 913 (1988) (a chin-up bar at a school was personalty and not a fixture); *Brown v. Quaker Valley School District, supra,* (school gymnastic equipment was not a fixture).

We turn now to plaintiff's second argument—that the district neglected its duty to adequately and safely prepare the real property for its intended use as a volleyball court because of the defect in the volleyball pole. This is a bootstrap argument which we do not accept.

Plaintiff cites *Singer v. School District of Philadelphia,* 99 Pa. Commw. 553, 513 A.2d 1108 (1986) in support of his proposition. There a student was injured when he missed a mat and landed on the school gymnasium hardwood floor after vaulting over a horse. In his complaint against the school district, the student alleged that the district was negligent in the care, custody and control of the landing surface by insufficiently protecting the hardwood floors with mats. The Commonwealth Court determined that this allegation stated a cause of action within the act's real property exception. The court held that sufficient matting protection was a necessary element of a gymnasium floor regularly used as

a gymnastic stunt area. The injury, therefore, was caused by a defect in the floor, the real estate, itself. See *Farella v. Bartoles*, 102 Pa. Commw. 258, 517 A.2d 1019 (1986).

*Singer* is not analogous to the case before us. Plaintiff's injury was not caused by a defective or unsafe condition of the real property itself. Rather, plaintiff's harm resulted from a defect in loose personalty within the real property. This is an important destinction. The *Singer* court did not hold, for example, that immunity was waived under the real property exception for a defect in the vaulting horse. Our position was concisely stated by the Commonwealth Court in *Vince v. Ringgold School District, supra.*

"Additionally, it cannot be argued that the building itself was negligently cared for because personalty within the real property was in a hazardous condition. Such interpretation would be a distortion of the language of the act. . . . For the limited waiver of immunity of section 8542(b)(3) to apply, there must be negligence which makes the real property itself unsafe for the activities for which it is used." *Id.* at 601, 499 A.2d at 1149 (citations omitted).

We were faced with identical facts in *Zelenevich v. New Hope-Solebury School District, supra,* and concluded that the school district there was immune under the act. Based upon the foregoing discussion, we see no reason to deviate from that holding now.